# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

J. CARL COOPER, *et al.*,

    Plaintiffs,

vs.

MICHELLE K. LEE, Deputy Director of the United States Patent and Trademark Office, *et al.*,

    Defendants.

No. 15-1205

## OPPOSITION TO MOTION TO TRANSFER

If it does not deny the USPTO's transfer motion outright, this Court should at least refer it to the merits panel. The Court of Appeals for the Federal Circuit has no jurisdiction over this appeal. Only this Court does.

### Background

The Federal Circuit hears appeals only in cases "arising under" an Act of Congress relating to patents, according to the express restriction written into the relevant statute. 28 U.S.C. § 1295(a)(1). This case, in sharp contrast to those over which the Federal Circuit has exclusive jurisdiction, "arises over" the patent laws. This case arises under the U.S. Constitution itself. Appellants solely present a facial constitutional challenge to portions of an Act of Congress. In so doing, they seek application of general principles

under the U.S. Constitution relating to Separation of Powers and the Seventh Amendment. While the USPTO is correct that Appellants challenge certain aspects of a 2011 amendment to the Patent Act, Appellants do not ask, and have not asked, any court (here or below) to interpret or apply any disputed statutory term within the Patent Act at all.

More specifically, Appellants challenge the fundamental legality under the U.S. Constitution of a procedure known as *inter partes* review. Congress injected *inter partes* review into the Patent Act in 2011, with the enactment of the America Invents Act. The relevant statutory provisions mostly exist at 35 U.S.C. §§ 311-319. The most important one – and the focus of Appellants' facial Separation of Powers challenge – is 35 U.S.C. § 318(b). This subsection permits the USPTO – an Article I agency of the Executive Branch – to "cancel" (*i.e.*, invalidate) the private property of an issued patent. Cancellation occurs after what the USPTO admits in its motion is an "adversarial proceeding." (Mot. 3). Leading up to cancellation, the USPTO does not empanel a jury. Instead, a panel of "administrative patent judges" makes the cancellation determination.

These characteristics of *inter partes* review are undisputed. Appellants thus contend that undisputed aspects of the Patent Act contain facial constitutional flaws.

2

The USPTO in its motion misperceives the nature of Appellants' challenge. The USPTO repeatedly misstates that Appellants filed this case as a challenge under the Administrative Procedures Act ("APA"). (Mot. 1, 2, 3, 4, 6). That is not correct. Instead, Appellants invoked the general jurisdiction of the federal courts to decide constitutional questions under 28 U.S.C. § 1331.

Likewise, the USPTO misstates that it is "undisputed" that Appellants may raise the same arguments within any direct appellate review of any adverse administrative decision. (Mot. 3). Even if this were relevant (and it is not), the jurisdictional statute establishing direct review to the Federal Circuit from administrative decisions appears to limit the Federal Circuit's authority: it may review only "final written decisions" that emerge from *inter partes* review. 35 U.S.C. §§ 141(c), 319. Unlike the text of 35 U.S.C. § 1331, Congress did not give the *inter partes* review jurisdictional appeal statute any text that expressly allows review of facial constitutional challenges to the Act itself.[1]

---

[1] The USPTO is correct that Appellants recently filed an *amicus* brief in a Federal Circuit matter where, on direct review under 35 U.S.C. § 141(c), a different party made a similar constitutional challenge. It remains to be seen whether the Federal Circuit believes it has authority to reach it. In any case, there is nothing unusual about the possibility of two avenues for constitutional challenges – one direct and one collateral.

3

Nor has Congress "channeled appeals from [facial constitutional challenge] proceedings to the Federal Circuit." (Mot. 1; *see also* Mot. 5). The provision cited by the USPTO to make this false assertion, 35 U.S.C. § 141(c), contains no language to "channel" *constitutional* claim judicial review into the Federal Circuit – only appeals from "final written decisions." *See generally Free Enterprise Fund v. Pub. Co. Accounting Oversight Bd.*, 130 S. Ct. 3138, 3150 (2010) (reaching Separation of Powers issue after determining that appellate review provision over final agency action did not cover facial constitutional challenges, so that provision's restrictions did not apply); *cf. Hettinga v. United States*, 560 F.3d 498, 503-04 (D.C. Cir. 2009) (restrictions on federal court proceedings in one area did not carry over to mandate the same restrictions for another area). The Second Circuit rejected a nearly identical argument in *Disabled American Veterans v. U.S. Department of Veterans Affairs*, 962 F.2d 136, 143 (2d Cir. 1992). There, a statute channeling review of "decisions of the [Secretary]" into the administrative process did not require dismissal of a district court action involving a facial challenge to the legislation itself. *Id.* ("Here, since the Veterans neither make a claim for benefits nor challenge the denial of such a claim, but rather challenge the constitutionality of a statutory classification drawn by Congress, the district court had jurisdiction to consider their claim.").

**Argument**

With these USPTO misimpressions set aside, there is no question that this case is one brought under the general laws, not the patent laws. Appellants' primary authority applies general constitutional principles restricting the Executive's ability to assert the judicial power. Legislation attempting to bestow such power must be invalidated.

Under these general law principles, a patent, upon issuance, is not subject to revocation or cancellation by any executive agent, including by any part of the USPTO. *McCormick Harvesting Mach. Co. v. Aultman*, 169 U.S. 606, 609 (1898). The Executive Branch invades the province of Article III courts to cancel a patent as invalid during any kind of post-grant proceedings. *Id.* at 612.

> [W]hen a patent has received the signature of the Secretary of the Interior, countersigned by the Commissioner of Patents, and has had affixed to it the seal of the Patent Office, *it has passed beyond the control and jurisdiction of that office, and is not subject to be revoked or cancelled by the President, or any other officer of the Government*. It has become the property of the patentee, and as such is entitled to the same legal protection as other property.

*Id.* at 608-09 (emphasis added, citations omitted). "The only authority competent to set a patent aside, or to annul it, or to correct it for any reason whatever, is vested in the courts of the United States, and not in the department which issued the patent." *Id.* Though the word "patent" appears

in these excerpts, the applicable jurisprudence grew out of, and applies equally to, *land* patents. These are not just "invention" patent concepts. *United States v. Am. Bell Tel. Co.*, 128 U.S. 315, 358-59 (1888) (discussing constitutional similarities between land and invention patents).

Though Appellants have raised general constitutional principles that any regional circuit court of appeals is competent to apply, the USPTO asserts that there is something exceptional about this case that makes the Federal Circuit the only proper reviewing court. Not so. Just because part of the Patent Act will be the *object* of this Court's scrutiny does not make this case "arise under" it. For example, a breach of contract action for nonpayment of a patent license fee is still just a state law breach of contract action, even though the factual background includes patents. *Cellport Sys., Inc. v. Peiker Acustic GMBH & Co. KG*, 762 F.3d 1016, 1021-23 (10th Cir. 2014) (following *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 809 (1988)) (holding Federal Circuit jurisdiction did not apply to breach of license agreement action because no infringement analysis was necessary, and denying motion to transfer appeal).

In *Goldstein v. Moatz*, 364 F.3d 205, 210 n.8 (4th Cir. 2004), this Court agreed, holding that a constitutional challenge to procedural actions of USPTO officials authorized by the Patent Act was not within Federal

6

Circuit jurisdiction. The fact that the Patent Act lay in the background did not deprive this Court of jurisdiction. *Id.* The same result applies here.

Appellants here make a facial challenge under the U.S. Constitution to *undisputed* features of the Patent Act: (1) the fact of patent cancellation by the Executive under 35 U.S.C. § 318(b) after an adversarial proceeding, and (2) the fact that juries do not make the decisions. The absence of any need to interpret a disputed part of the Patent Act distinguishes this case from the USPTO's principal authority, *Madstad Engineering, Inc. v. U.S. Patent and Trademark Office*, 756 F.3d 1366 (Fed. Cir. 2014). *Madstad*, in turn, interpreted recent Supreme Court authority to reach its result. Therefore, to understand *Madstad* requires looking back to the controlling Supreme Court decisions that determined its result.

In *Gunn v. Minton*, 133 S. Ct. 1059 (2013), the Supreme Court addressed the linguistically similar question of what kind of claim "arises under" the patent laws such that district courts may assert jurisdiction under 28 U.S.C. § 1338(a). The *Gunn* Court held that the legal malpractice claim before it did not arise under federal patent law. This was so, even though the underlying claim required a "case within a case" to determine whether patent trial attorneys botched the presentation of a patent law doctrine, causing a patent to be found wrongly invalid.

7

At the outset, the *Gunn* Court identified two ways a case might "arise under" the patent laws – one common and one rare. The common way is when the patent laws create the cause of action (as with a typical patent infringement assertion). *Id.*, 133 S. Ct. at 1064. The rare way is when a claim may "arise under" the patent law even when it does not create the cause of action. The Court labeled this category "special," "small" and "slim." *Id.* In testing whether a claim fits the "special, small and slim" category whose origins are not in the patent laws themselves, the *Gunn* court applied the framework of *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314-15 (2005). The *Grable* framework (previously applied to determine if a claim "arises under" generic federal versus state law) asks four questions about the putative federal issue: is it (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. *Gunn*, 133 S. Ct. at 1065 (discussing *Grable*). The *Gunn* claim failed the third and fourth tests. *Id.* at 1067. Thus, the patent litigation legal malpractice case had to be heard in state court.

In *Madstad*, the Federal Circuit addressed its jurisdiction over review of a constitutional challenge to the "first inventor to file" provision of the America Invents Act (a provision not at issue here). *See Madstad*, 756 F.3d at

1370. The Federal Circuit held that the *Gunn/Grable* test *did* result in the case "arising under" the patent laws. As in *Gunn*, the Federal Circuit held that matters of patent law were necessarily raised and actually disputed. That was because "the constitutional challenge here would require [the Federal Circuit] to interpret the terms 'inventor' and 'first-inventor-to-file' under the AIA and to assess the interactions between those terms and the use of the term 'Inventor' in the Intellectual Property Clause of the United States Constitution – Article I, Section 8, Clause 8." *Id*. But contrary to *Gunn*, the Federal Circuit in *Madstad* went on to hold that the full *Grable* test was met. *Id.* at 1371.

Applying these principles here, this case does not fit within the "special, small and slim" category of cases that "arise under" the patent laws even though their origin is found elsewhere. No question of patent law is "necessarily raised and actually disputed." Appellants' claim does not require an interpretation of any disputed statutory term in the Patent Act or in the Constitution's Intellectual Property Clause. This case calls for a different result from *Madstad*. This case presents the simple question of whether a new and undisputedly adjudicatory proceeding designed to invalidate certain patents – appropriately named "*inter partes* review" – improperly places the judicial power within the Executive Branch. It also asks whether the

9

undisputed absence of juries from such proceedings violates patentees' rights under the Seventh Amendment to a jury's adjudication of patent validity. Thus, different from *Madstad* but the same as *Gunn*, the *Grable* test is not met and the Federal Circuit's jurisdictional power does not trigger.[2]

Seeking to avoid this outcome, the USPTO's motion asserts that the present case requires a court to determine "the nature of the rights conferred on patent owners under the Patent Act and whether those rights constitute the sort of 'public rights' that Congress may permissibly delegate to a non-Article III tribunal for adjudication." (Mot. 6). Citing one such "public rights" case from the Supreme Court (*Stern v. Marshall*, 131 S. Ct. 2594 (2011) (dealing with tort counterclaims within bankruptcy proceedings)), the

---

[2] The USPTO correctly notes that the Federal Circuit reached and decided constitutional challenges to a different proceeding – *ex parte* reexamination. (Mot. 4, citing *Patlex Corp. v. Mossinghoff*, 758 F.2d 594 (Fed. Cir. 1985) and *Joy Techs., Inc. v. Manbeck*, 959 F.2d 226 (Fed. Cir. 1992)). But those cases did require interpretation of disputed Patent Act sections. *Patlex* required determination of the disputed question of whether the presumption of validity under 35 U.S.C. § 282 applies within patent reexamination under 35 U.S.C. § 301 *et seq.*, and what the answer signifies for patents that had issued before the 1980 enactment of reexamination. 758 F.2d at 605. Likeise, *Joy* required determination of the disputed question of whether the disclosure obligation codified in the Patent Act at 35 U.S.C. § 112, involves property separate from that in the patent claims that cannot be recaptured as trade secrets after USPTO reexamination cancels a patent. 959 F.2d at 229. These questions do not exist in this case. Thus, unlike here, *Patlex* and *Joy* fall into the *Madstad* category of cases requiring interpretation of disputed terms within the Patent Act. Appellants' upcoming principal brief will explain why *ex parte* reexamination passed constitutional muster for exactly the reasons that *inter partes* review does not.

USPTO asserts that "plaintiffs' complaint requires the resolution of a substantial question of federal patent law: whether the rights that are determined in inter partes review proceedings under 35 U.S.C. § 311 are 'integrally related' to matters that Congress has permissibly delegated to the PTO in the Patent Act." (Mot. 6).

Even accepting the USPTO's characterizations, these issues lie at the heart of the purview of Article III constitutional courts, interpreting and applying the dictates of the U.S. Constitution and related Supreme Court jurisprudence. And, as cited above, the Supreme Court already made these determinations long before the enactment of the Patent Act of 1952 or the 2011 amendments under challenge here. "The only authority competent to set a patent aside, or to annul it, or to correct it for any reason whatever, is vested in the courts of the United States, and not in the department which issued the patent." *McCormick*, 169 U.S. at 608-09. The "public rights" exception is a red herring, and even if not, simply calls for application of general constitutional law, not the patent law.

Indeed, the Supreme Court had many chances to apply the "public rights" exception to patents, but did not. As explained in district court briefing, the "public rights" exception that sometimes permits Executive adjudication emerged at the same time as a strong and emphatic line of cases

11

(culminating with *McCormick*) that unambiguously forbade Executive adjudication over the validity of government-issued private property (such as invention and land patents). (ECF No. 3, at 8). Yet, the Supreme Court never once suggested that the "public rights" exception to the Separation of Powers requirement might apply. *Id.* Thus, the USPTO is wrong to suggest that this Court must "decide" whether the Constitution gives any leeway to Congress to remove private property validity adjudication from district courts and place it under the control of the President. That issue has already been decided, as a matter of Supreme Court constitutional law, not patent law.

Nor would it be proper to consider the USPTO's defenses – such as administrative exhaustion – as a factor in the jurisdictional analysis. Only the allegations of the claim within the complaint may be considered. *Christianson*, 486 U.S. at 809. Here, as the USPTO acknowledges, the allegations in the present case seek a finding of facial unconstitutionality under Article III and the Seventh Amendment. Whether or not the USPTO might ultimately prevail on any of its various arguments seeking a finding of administrative exhaustion (as it did in the district court) is wholly irrelevant to whether this Court has jurisdiction over issues directly and fundamentally arising under the United States Constitution itself. *Id.*

## Conclusion

The USPTO's motion should be denied, or at least referred to the merits panel. This appeal does not address or seek review of any governmental action under the Administrative Procedures Act, but rather asserts a facial constitutional challenge to an Act of Congress under 28 U.S.C. § 1331. The object of that challenge is a statutory proceeding whose nature is undisputed, and requires no interpretation or application of the Patent Act. For the foregoing reasons, this case does not "arise under" the Patent Act, and this Court has full jurisdiction under 28 U.S.C. § 1291 to review it.

Dated: March 18, 2015

Respectfully submitted,

/s/ *Robert P. Greenspoon*

Robert P. Greenspoon
Flachsbart & Greenspoon, LLC
333 N. Michigan Ave., Suite 2700
Chicago, Illinois 60601
(312) 551-9500
rpg@fg-law.com

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system on March 18, 2015. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ *Robert P. Greenspoon*