RECORD NUMBER: 15-1205

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

### *for the*

# 𝔉𝔬𝔲𝔯𝔱𝔥 𝔆𝔦𝔯𝔠𝔲𝔦𝔱

**J. CARL COOPER and eCHARGE LICENSING, LLC,**

*Plaintiffs/Appellants,*

– v. –

**MICHELLE K. LEE, in her capacity as Deputy Director of the United States Patent & Trademark Office and UNITED STATES PATENT & TRADEMARK OFFICE,**

*Defendants/Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA AT ALEXANDRIA

## OPENING BRIEF OF APPELLANTS

**ROBERT P. GREENSPOON**
**WILLIAM W. FLACHSBART**
FLACHSBART & GREENSPOON, LLC
**333 North Michigan Avenue, Suite 2700**
**Chicago, IL 60601**
**(312) 551-9500**

**NICHOLAS V. CUMINGS**
**KRISTIN A. ZECH**
BRIGLIAHUNDLEY, PC
**1921 Gallows Road, Suite 750**
**Tysons Corner, VA 22182**
**(703) 883-0880**

*Counsel for Appellants*

 COUNSEL PRESS • VA – (800) 275-0668

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus
case, except that a disclosure statement is **not** required from the United States, from an indigent
party, or from a state or local government in a pro se case. In mandamus cases arising from a
civil or bankruptcy action, all parties to the action in the district court are considered parties to
the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are
required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the
required disclosure statement, counsel may file the disclosure statement in paper rather than
electronic form. Counsel has a continuing duty to update this information.

No. 15-1205 _____ Caption: J. Carl Cooper et al. v. Michelle K. Lee et al. _____

Pursuant to FRAP 26.1 and Local Rule 26.1,

J. Carl Cooper; eCharge Licensing, LLC _____
(name of party/amicus)

_____

who is _____ appellant _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?                 ☑ YES ☐ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent
      corporations:

      Cascades Ventures, Inc.

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
      other publicly held entity?                                ☐ YES ☑ NO
      If yes, identify all such owners:

10/28/2013 SCC                           - 1 -

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: /s/ Robert P. Greenspoon                    Date:    3/3/2015

Counsel for: Appellants

## CERTIFICATE OF SERVICE
*****************************

I certify that on ____3/3/2015____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

/s/ Robert P. Greenspoon                              3/3/2015
        (signature)                                      (date)

- 2 -

# TABLE OF CONTENTS

Corporate Disclosure Statement

Table of Authorities ............................................................................ iii

Introduction ....................................................................................... 1

Jurisdictional Statement .................................................................... 3

Statement of the Issues ..................................................................... 3

Statement of the Case ....................................................................... 4

    A.    Procedural Background ...................................................... 4

    B.    The Nature of *Inter Partes* Review ...................................... 6

Summary of the Argument ................................................................ 13

Argument ........................................................................................... 14

    Standard of Review ........................................................................ 14

    Discussion ...................................................................................... 14

    A.    The Supreme Court Has Always Treated Patent Invalidation, Whether for Land or Invention Patents, as Subject Solely to the Judicial Power under Article III ........................................................ 16

    B.    Adjudications of Validity are Seventh Amendment-Protected Private Rights ................................................ 24

    C.    The District Court Did Not Succeed in Its Attempt to Fit *Inter Partes* Review Under the Holdings of *Patlex* or *Joy* .......................... 30

    D.    Administrative Exhaustion Should Not Apply Here .......................... 33

        1.    No Express Exhaustion ........................................... 35

i

2.       No Prudential Exhaustion ......................................................... 40

3.       The District Court's Decisions are Distinguishable ................ 42

Conclusion and Proper Remedy................................................................. 46

Statement Regarding Oral Argument ....................................................... 48

Certificate of Compliance

Certificate of Service

# TABLE OF AUTHORITIES

## Cases

*Abbott Labs v. Cordis Corp.*,
　　710 F.3d 1318 (Fed. Cir. 2013) ................................................... 10

*Am. Fed'n of Gov't Emps, AFL-CIO v. Nimmo,*
　　711 F.2d 28 (4ᵗʰ Cir. 1983) ......................................................... 45

*B&B Hardware v. Hargis Industries*,
　　No. 13-352, Slip Op. (U.S. Mar. 24, 2015) ........................................... 22, 23

*Blitz v. Napolitano*,
　　700 F.3d 733 (4ᵗʰ Cir. 2012) ....................................................... 39

*Consolidated Fruit Jar Co. v. Wright*,
　　4 Otto 92, 94 U.S. 92 (1876) ....................................................... 17

*Cooper v. Lee*,
　　2015 U.S. Dist. LEXIS 19419, Case No. 1:14-cv-00672-GBL-JFA,
　　(E.D. Va. Feb. 18, 2015) ....................................................... passim

*Crowell v. Benson*,
　　285 U.S. 22 (1932) ............................................................... 26

*Curtis v. Loether*,
　　415 U.S. 189 (1974) .............................................................. 28

*Dickinson v. Zurko*,
　　527 U.S. 150 (1999) .............................................................. 9

*Elgin v. Dep't of the Treasury*,
　　132 S. Ct. 2126 (2012) ........................................................... 39

*Ex parte Schurz*,
　　102 U.S. 378 (1880) .............................................................. 21

*Free Enterprise Fund v. Pub. Co. Accounting Oversight Bd.*,
　　130 S. Ct. 3138 (2010) ........................................................... 39, 47

*Garmin Int'l, Inc. v. MSPBO, LLC,*
  IPR2014-01379, Paper 11 (PTAB March 3, 2015) ..................................... 41

*Granfinanciera, S.A. v. Nordberg,*
  492 U.S. 33 (1989) ..................................................................................... 27

*Guerra v. Scruggs,*
  942 F.2d 270 (4th Cir. 1991) ..................................................................... 45

*Hettinga v. United States,*
  560 F.3d 498 (D.C. Cir. 2009) ............................................................ passim

*Hewlett-Packard Company v. MCM Portfolio, LLC,*
  IPR2013-00217, Paper 31 (PTAB August 6, 2014) .................................... 41

*Idle Free Sys., Inc. v. Bergstrom, Inc.,*
  IPR2012-00027, Paper 26 (PTAB June 11, 2013) ..................................... 10

*In re Cuozzo Speed Techs., LLC,*
  No. 14-1301, __ F.3d __, 2015 U.S. App. LEXIS 1699
  (Fed. Cir. Feb. 4, 2015) .............................................................................. 10

*In re Cuozzo,*
  2015 U.S. App. LEXIS 1699 .................................................................. 11, 13

*In re Lockwood,*
  50 F.3d 966 (Fed. Cir. 1995), *vacated,* 515 U.S. 1182 (1995) .............. 28, 29

*In re Mankin,*
  823 F.2d 1296 (9th Cir. 1987) ................................................................... 23

*In re Tech. Licensing Corp.,*
  423 F.3d 1286 (Fed. Cir. 2005) ................................................................. 29

*Iron Silver Mining Co. v. Campbell,*
  135 U.S. 286 (1890) ................................................................................... 21

*Johnson v. Robison,*
  415 U.S. 361 (1974) ................................................................................... 39

*Joy Techs., Inc. v. Manbeck*,
  959 F.2d 226 (Fed. Cir. 1992), *cert. denied*, 506 U.S. 829 (1992) ....... passim

*Marbury v. Madison*,
  5 U.S. 137 (1803) ......................................................................................... 1

*Markman v. Westview Instruments, Inc.*,
  517 U.S. 370 (1996) .................................................................................. 28

*Mathews v. Eldridge*,
  424 U.S. 319 (1976) .................................................................................. 39

*McCarthy v. Madigan*,
  503 U.S. 140 (1992) ........................................................................... passim

*McCormick Harvesting Mach. Co. v. Aultman*,
  169 U.S. 606 (1898) ........................................................................... passim

*McNary v. Haitian Refugee Ctr. Inc.*,
  498 U.S. 479 (1991) .................................................................................. 39

*MedImmune, Inc. v. Genentech, Inc.*,
  535 F. Supp. 2d 1020 (C.D. Cal. 2008) ................................................... 28

*Microsoft Corp. v. i4i Ltd. P'ship*,
  131 S. Ct. 2238 (2011) .............................................................................. 11

*Moore v. City of East Cleveland*,
  431 U.S. 494 (1977) .................................................................................. 41

*Moore v. Robbins,*
  96 U.S. 530 (1877) .............................................................................. 20, 21

*Nationsbank Corp. v. Herman*,
  174 F.3d 424 (4th Cir. 1999) .............................................................. 33, 43

*Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*,
  459 U.S. 50 (1982) .............................................................................. 23, 32

*Patlex Corp. v. Mossinghoff*,
　758 F.2d 594 (Fed. Cir. 1985) ............................................................... passim

*Patlex Corp., Inc. v. Mossinghoff*,
　585 F. Supp. 713 (E.D. Pa. 1983) ................................................................. 23

*Public Utilities Commission of California v. United States*,
　355 U.S. 534 (1958) ...................................................................................... 37

*Republican Party of Minn. v. White*,
　536 U.S. 765 (2002) ...................................................................................... 24

*S. Carolina Citizens for Life, Inc. v. Krawcheck*,
　301 Fed. Appx. 218 (4th Cir. 2008) ...................................................... 16, 34

*ScentAir Tech., Inc. v. Prolitec, Inc.*,
　IPR2013-00179, Paper 9 (PTAB April 16, 2013) ............................ 10, 11, 42

*Swofford v. B & W, Inc.*,
　336 F.2d 406 (5th Cir. 1964), *cert. denied*, 379 U.S. 962 (1965) ............... 27

*Talbot v. Lucy Corr Nursing Home*,
　118 F.3d 215 (4th Cir. 1997) ....................................................................... 14

*Thetford Props. IV Ltd. P'Ship v. HUD*,
　907 F.2d 445 (4th Cir. 1990) ........................................................... 15, 44, 45

*Thunder Basin Coal Co. v. Reich*,
　510 U.S. 200 (1994) ............................................................................... 16, 38

*Ticor Title Ins. Co. v. FTC*,
　814 F.2d 731 (D.C. Cir. 1987) ..................................................................... 15

*Tull v. United States*,
　481 U.S. 412 (1987) ...................................................................................... 28

*United States v. Am. Bell Tel. Co.*,
　128 U.S. 315 (1888) ................................................................................ passim

*United States v. Missouri, Kansas & Texas Railway*,
　141 U.S. 358 (1891) ...................................................................................... 19

*United States v. Stone*,
2 Wall. 525, 69 U.S. 525 (1864) ............................................................ 18, 20

*Versata Dev. Corp. v. Rea*,
959 F. Supp. 2d 912 (E.D. Va. 2013) ......................................................... 36

*Volvo GM Heavy Truck Corp. v. Dep't of Labor*,
118 F.3d 205 (4th Cir. 1997) ............................................................. 37, 40, 43

*Weinberger v. Salfi*,
422 U.S. 749 (1975) ...................................................................................... 35

**Rules, Statutes, and Other Authorities**

28 U.S.C. § 1291 ............................................................................................ 3

28 U.S.C. § 1295(a) ...................................................................................... 3

28 U.S.C. § 1331 ............................................................................................ 3

28 U.S.C. § 2201 ............................................................................................ 3

35 U.S.C. § 141(c) ........................................................................................ 9

35 U.S.C. § 301 ............................................................................................ 11

35 U.S.C. § 302 ............................................................................................ 12

35 U.S.C. § 311 .............................................................................................. 4

35 U.S.C. § 314 .............................................................................................. 8

35 U.S.C. § 314(d) ...................................................................................... 36

35 U.S.C. § 316(e) ...................................................................................... 11

35 U.S.C. § 318(b) ................................................................................... 9, 47

35 U.S.C. § 319 ..................................................................................... 38, 39

35 U.S.C. §§ 311-19 ................................................................................ 7

37 C.F.R. § 1.555(a) ............................................................................. 13

37 C.F.R. § 1.550(g) ............................................................................. 12

37 C.F.R. § 1.560 ................................................................................. 12

37 C.F.R. § 1.570 ................................................................................. 13

37 C.F.R. § 42.5(d) ................................................................................ 9

37 C.F.R. § 42.8(b) ................................................................................ 8

37 C.F.R. § 42.15 .................................................................................. 7

37 C.F.R. § 42.25 .................................................................................. 8

37 C.F.R. § 42.51 .................................................................................. 8

37 C.F.R. § 42.51(b)(1) .......................................................................... 8

37 C.F.R. § 42.51(b)(2) .......................................................................... 8

37 C.F.R. § 42.53 .................................................................................. 9

37 C.F.R. § 42.64 .................................................................................. 9

37 C.F.R. § 42.70 .................................................................................. 9

37 C.F.R. § 42.73(b)(2) .......................................................................... 9

37 C.F.R. § 42.108 ................................................................................. 7

Fed. R. Civ. P. 26(a)(1) ................................................................... 8, 25

U.S. Const. amend. IV ......................................................................... 43

U.S. Const. amend. V .......................................................................... 43

viii

U.S. Const. amend. VII ...................................................................... passim

20 H. Rep. No. 96-1307, 96th Cong., 2d Sess. (1980) ........................... 12

Jennifer R. Bush, *Administrative Patent Judges: Not Your Typical Federal Judge*,
Fenwick & West LLP (July 10, 2014),
https://www.fenwick.com/publications/Pages/Administrative-Patent-Judges-Not-
Your-Typical-Federal-Judge.aspx ......................................................... 7

James E. Daily and F. Scott Kieff, *Benefits of Patent Jury Trials for
Commercializing Innovation*, 21 Geo. Mason L. Rev. 865 (2014) ........................ 1

Ryan Davis, *PTAB's "Death Squad" Label Not Totally Off-Base, Chief Says*,
Law360 (August 14, 2014) ..................................................................... 1

Sue A. Purvis, "The Role of a Patent Examiner," at 8
http://www.uspto.gov/sites/default/files/about/offices/ous/04082013_StonyB
rookU.pdf ......................................................................................... 13

Manual of Patent Examining Procedure (MPEP) § 2236 ....................................... 12

Office Patent Trial Practice Guide, 77 Fed. Reg. 48,761 (Aug. 14, 2012) ............. 8

## I.    INTRODUCTION

In 2011, Congress passed legislation diverting patent validity litigation into an administrative agency tribunal. The process, called *inter partes* review, makes it harder for new firms to enter and compete in markets.[1] The administration personnel who now replace juries and judges for such matters quickly gained a reputation as "patent death squads."[2] This case challenges the constitutionality of *inter partes* review.

Since *Marbury v. Madison*, 5 U.S. 137 (1803), the Judiciary must declare whether Acts of Congress are valid under the United States Constitution. This appeal seeks correction of the error by the district court in failing to hold unconstitutional the new *inter partes* review proceedings conducted by the United States Patent and Trademark Office (USPTO), an Article I agency of the Executive within this judicial circuit. Those proceedings unconstitutionally assign to an Article I tribunal matters reserved for the Judiciary, in violation of Separation of Powers principles.

---

[1] James E. Daily and F. Scott Kieff, *Benefits of Patent Jury Trials for Commercializing Innovation*, 21 Geo. Mason L. Rev. 865, 878-79 (2014) ("One reason for this is that larger firms generally are thought to be more effective at bringing political influence to bear in agency determinations.").

[2] Both the erstwhile Chief Judge of the Court of Appeals for the Federal Circuit and the Chief Patent Judge of the Patent Trial and Appeal Board have publicly agreed that "patent death squad" is an accurate label. Ryan Davis, *PTAB's "Death Squad" Label Not Totally Off-Base, Chief Says*, Law360 (August 14, 2014).

They also adjudicate patent validity without a jury, in violation of patentees' Seventh Amendment rights.

A patent, upon issuance, is not subject to revocation or cancellation by any executive agent, including by any part of the USPTO. *McCormick Harvesting Mach. Co. v. Aultman*, 169 U.S. 606, 609 (1898). The Executive branch invades the province of Article III courts to cancel a patent as invalid during any kind of post-grant proceedings. *Id*. at 612.

> [W]hen a patent has received the signature of the Secretary of the Interior, countersigned by the Commissioner of Patents, and has had affixed to it the seal of the Patent Office, *it has passed beyond the control and jurisdiction of that office, and is not subject to be revoked or cancelled by the President, or any other officer of the Government*. It has become the property of the patentee, and as such is entitled to the same legal protection as other property.

*Id.* at 608-09 (emphasis added, citations omitted). "The only authority competent to set a patent aside, or to annul it, or to correct it for any reason whatever, is vested in the courts of the United States, and not in the department which issued the patent." *Id.*

Because *inter partes* review does to patents what the Supreme Court says cannot be done, it is clearly unconstitutional. Clear unconstitutionality negates the district court's application of administrative exhaustion, and entitles Appellants to substantive relief in this Court.

2

## II.    JURISDICTIONAL STATEMENT

This matter raises a claim that particular provisions of an Act of Congress violate Separation of Powers principles and the Seventh Amendment to the United States Constitution. The district court had jurisdiction under 28 U.S.C. § 1331 because this matter arose under the United States Constitution and the Declaratory Judgment Act, 28 U.S.C. § 2201. The Court of Appeals has jurisdiction over this appeal as an appeal from a final judgment under 28 U.S.C. § 1291, entered on February 18, 2015. Appellants timely filed the notice of appeal on February 19, 2015.

Appellate jurisdiction does not reside in the Court of Appeals for the Federal Circuit under 28 U.S.C. § 1295(a). The Appellee disagrees and has moved to transfer this appeal. Appellants have opposed. Appellants have asked that, at a minimum, the transfer/jurisdiction question should be referred to the merits panel. For these reasons, Appellants respectfully incorporate by reference their opposition to the transfer motion.

## III.    STATEMENT OF THE ISSUES

Whether *inter partes* review violates Separation of Powers principles, and/or the Seventh Amendment right to a jury trial.

## IV.   STATEMENT OF THE CASE

### A.   Procedural Background

Appellant J. Carl Cooper ("Mr. Cooper") is an inventor and owner of numerous United States patents. Appellant eCharge Licensing, LLC "(eCharge") is an entity that helps inventors effectively license their intellectual property. Mr. Cooper granted eCharge an exclusive license to a number of his patents.

During a concurrent proceeding in the Northern District of Illinois in which eCharge sought a jury's determination of infringement, validity and damages, the defendant in that action petitioned the Patent Trial and Appeal Board (the "PTAB," a branch of the USPTO) to conduct an *inter partes* review of three of Mr. Cooper's patents, as provided in 35 U.S.C. § 311. (*eCharge Licensing LLC v. Square, Inc.*, Case No. 1:13-cv-06445 (N.D. Ill.)). The Northern District of Illinois stayed that action pending the PTAB's decision. On May 15, 2014, the PTAB instituted *inter partes* reviews of U.S. Patent Nos. 6,764,005; 7,828,207; and 8,490,875.

Appellants promptly filed suit in the Eastern District of Virginia on June 5, 2014, seeking a declaratory judgment that *inter partes* review proceedings are unconstitutional on their face, and requesting relief in the form of an injunction barring the USPTO from continuing its

unconstitutional practices. On the same day they filed the Complaint, Appellants moved for summary judgment in their favor. The USPTO appeared but did not file an answer. Instead, it cross-moved for summary judgment, raising a new ground to dissuade the district court from granting relief – failure to exhaust administrative remedies.

The district court heard oral arguments in October 2014. On February 18, 2015, the district court granted the USPTO's motion on administrative exhaustion grounds, reaching (but rejecting) whether *inter partes* review embodies a clear constitutional violation. *See Cooper v. Lee*, 2015 U.S. Dist. LEXIS 19419, Case No. 1:14-cv-00672-GBL-JFA, (E.D. Va. Feb. 18, 2015). The district court required exhaustion, even though the USPTO lacks authority to reach or decide the constitutional questions. In making this determination, the district court did not cite or attempt to distinguish *McCormick*, 169 U.S. 606. The district court also determined that *inter partes* review "mirrors" a different kind of USPTO proceeding called *ex parte* reexamination. It therefore held that previous authority supporting the constitutionality of *ex parte* reexamination made it unlikely that Appellants would succeed in their arguments that *inter partes* review failed constitutional tests.

These determinations by the district court overlooked the controlling distinctions between *ex parte* reexamination and *inter partes* review that Appellants had explained in detail in their district court submissions. (ECF No. 3, at 16-22; ECF No. 24, at 2-14). These determinations also overlooked unambiguous Supreme Court authority forbidding the Executive from canceling or invalidating issued patents. And even though Appellants' suit did not challenge any actual administrative *decision* by the PTAB or the USPTO (instead challenging the constitutionality of the power to adjudicate), the district court mistakenly applied exhaustion principles that only relate to challenges to agency *decision making* (as opposed to challenges to the legality of its processes as a whole).

Because of the importance of the issues and the profound errors by the district court, Appellants filed their notice of appeal immediately.

**B.    The Nature of *Inter Partes* Review**

The district court decision overlooks the adjudicatory nature of *inter partes* review. Its opinion contains conclusory statements describing it as "mirroring" a prior proceeding known as *ex parte* reexamination. *Cooper*, 2015 U.S. Dist. LEXIS 19419, at *17-18. But the *inter partes* review procedure is of an adjudicatory nature. It is nothing like "examination" of a patent application. The USPTO itself agrees in its transfer motion that this

appeal raises a question whether "Congress may permissibly delegate [patent validity] to a non-Article III tribunal *for adjudication*" (Appeal ECF No. 18, at 6, (emphasis added)). The USPTO also agrees that *inter partes* review is "an adversarial proceeding before the Board," at the end of which "the Board issues a final written decision" (*id.* at 3).

In 2011, Congress passed the America Invents Act, and the President signed it into law on September 16, 2011 as Public Law 112–29. This Act enabled *inter partes* review, governed now under 35 U.S.C. §§ 311-19. A private person may petition the PTAB to commence an *inter partes* review by submitting a large fee along with a demonstration of a reasonable likelihood that at least one of the claims challenged is unpatentable as anticipated or obvious. 37 C.F.R. §§ 42.15, 42.108. The petition gets assigned to one of many possible PTAB "Judicial Panels" (as it is known internally). *See* E-mail from Patrick E. Baker, PTAB Trial Paralegal (June 3, 2014, 9:09 CST) (A103). This is a panel of administrative law judges, *not* patent examiners (and *not* Article III judges). *See* Jennifer R. Bush, *Administrative Patent Judges: Not Your Typical Federal Judge*, Fenwick & West LLP (July 10, 2014), https://www.fenwick.com/publications/Pages/Administrative-Patent-Judges-Not-Your-Typical-Federal-Judge.aspx ("Based on a sampling of about half

of the current administrative patent judges from their LinkedIn profiles, most . . . have . . . 10-plus years of experience. A full 84 percent are former patent attorneys having practiced in the private sector. . . . About one quarter (23 percent) have experience as examiners or other USPTO roles . . . ."). Within six months, the Judicial Panel reviews the petitioner's evidence (and any patent owner preliminary response) and makes a determination of whether it believes that the petitioner was right in its "reasonable likelihood" arguments. If so, it will then "institute" a "trial." 35 U.S.C. § 314.

The Judicial Panel enters an initial scheduling order concurrent with the decision to institute a trial. 37 C.F.R. § 42.25. All deadlines are subject to that order. The parties then file mandatory notices regarding real parties-in-interest and related matters, *id.* § 42.8(b), and provide initial disclosures that are expressly modeled after Fed. R. Civ. P. 26(a)(1). *See id.* § 42.51; Office Patent Trial Practice Guide, 77 Fed. Reg. 48,761 (Aug. 14, 2012). The PTAB's regulations provide for depositions, and authorize parties to seek such discovery as the Patent Office determines is otherwise necessary in the interest of justice. 37 C.F.R. § 42.51(b)(2). Routine discovery includes cited documents, cross-examination of declaration testimony, and information inconsistent with positions advanced during the proceeding. *See id.* § 42.51(b)(1). A party may compel testimony and production with the

PTAB's prior authorization, *id.* § 42.52, and may also have a certified court reporter present for depositions and conference calls. *See id.* § 42.53. The parties then file objections, motions *in limine*, and motions to exclude arguably inadmissible evidence at the close of fact discovery. *Id.* § 42.64. Oral argument is also permissible. *Id.* § 42.70.

Throughout the process, as with an Article III court, the parties are prohibited from having *ex parte* communications with the Judicial Panel on substantive matters. *Id.* § 42.5(d). At the end of this judicial process, the result is a final written decision of the PTAB that may include patent cancellation. *Id.* § 42.73(b)(2); 35 U.S.C. § 318(b). The PTAB thus performs the role of the Judicial branch, and Article III courts are only called upon at the circuit court level to review the PTAB's decision under a deferential standard. *See* 35 U.S.C. § 141(c); *Dickinson v. Zurko*, 527 U.S. 150, 152 (1999).

The PTAB itself has bristled at any suggestion that it performs "examination" – a task reserved to the technologically trained (and largely non-attorney) USPTO examination corps. As the PTAB admits, "[a]n *inter partes* review is not original examination, continued examination, or reexamination of the involved patent. Rather, it is a trial, adjudicatory in nature and constituting litigation." *ScentAir Tech., Inc. v. Prolitec, Inc.*,

9

IPR2013-00179, Paper 9, at 4 (PTAB April 16, 2013). The PTAB has made this point more than once: "An *inter partes* review is more adjudicatory than examinational in nature." *Idle Free Sys., Inc. v. Bergstrom, Inc.*, IPR2012-00027, Paper 26, at 6 (PTAB June 11, 2013) (citing *Abbott Labs v. Cordis Corp.*, 710 F.3d 1318, 1326 (Fed. Cir. 2013) ("The purpose . . . was to convert *inter partes* reexamination from an examinational to an adjudicative proceeding . . . .")). The Federal Circuit also recognizes its adjudicatory nature. *See In re Cuozzo Speed Techs., LLC*, No. 14-1301, __ F.3d __, 2015 U.S. App. LEXIS 1699, at *20-21 (Fed. Cir. Feb. 4, 2015) (majority opinion acknowledging "adjudicatory" nature of *inter partes* review, and stating "Congress in enacting the AIA was aware of these differences in terms of amendments and adjudication . . . ."); *Id.* at *34 (Newman, J., dissenting) ("[Congress] provid[ed] a new adjudicatory proceeding in the administrative agency, the Patent and Trademark Office, in the Department of Commerce, whereby a newly formed Patent Trial and Appeal Board (PTAB) serves as a surrogate for district court litigation of patent validity."). And as mentioned, Appellees have conceded its adjudicatory nature within this very proceeding (Appeal ECF No. 8, at 6).

Though adjudicatory, *inter partes* review proceedings depart from adjudication standards that have been developed over centuries in Article III

courts. For example, when invalidity is raised in a declaratory judgment action or as a defense in an Article III court, the patentee enjoys a presumption of validity that must be overcome by the accused infringer or declaratory judgment plaintiff by clear and convincing evidence. *See* 35 U.S.C. § 282 ("A patent shall be presumed valid. Each claim of a patent . . . shall be presumed valid independently of the validity of other claims. . . . The burden of establishing invalidity . . . shall rest on the party asserting such invalidity . . . ."); *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2242 (2011) (reaffirming clear and convincing standard). By contrast, the petitioner in an *inter partes* review must only prove invalidity by a preponderance of the evidence. *See* 35 U.S.C. § 316(e). In addition, the USPTO construes claims under the "broadest reasonable interpretation," not the "correct" one. *See In re Cuozzo*, 2015 U.S. App. LEXIS 1699, at *39 (Newman, J., dissenting).

*Ex parte* patent reexamination is different. *Accord ScentAir Tech., Inc.*, IPR2013-00179, Paper 9, at 4 ("[a]n *inter partes* review is not . . . reexamination . . . ."). *Ex parte* reexamination first came into existence in 1980. *See* Pub. L. 96–517, 94 Stat. 3015 (Dec. 12, 1980) (codified at 35 U.S.C. § 301 *et seq.*). There, a person – including the patentee itself – may file a request to reopen the examination process for a given patent. 35 U.S.C.

§ 302. If the request is granted, the case gets assigned to one of a special corps of technologically trained patent examiners within a branch called the "Central Reexamination Unit." Manual of Patent Examining Procedure (MPEP) § 2236. Third parties are forbidden from participating after the grant; only the patentee may work with the examiner. 37 C.F.R. § 1.550(g).

The legislative history for *ex parte* reexamination confirms that Congress designed it to help patentees *salvage* their claims from prospective in-court invalidation, unlike *inter partes* review which Congress intended as a streamlined way to *annihilate* them. The House Report that preceded the 1980 enactment of *ex parte* reexamination made this clear:

> A new patent reexamination procedure is needed to permit the owner of a patent to have the validity of his patent tested in the Patent office where the most expert opinions exist and at a much reduced cost. Patent office reexamination will greatly reduce, if not end, the threat of legal costs being used to "blackmail" such holders into allowing patent infringements or being forced to license their patents for nominal fees.

20 H. Rep. No. 96-1307, 96th Cong., 2d Sess. (1980) (discussing H.R. 6933, which became *ex parte* reexamination).

Consistently, unlike the newly fashioned Judicial Panels, reexamination examiners may give interviews to patentees to discuss the merits of the matter. *Id.* § 1.560. Examiners are trained to be helpful to applicants and patentees during this process, to help them identify *allowable*

subject matter for potential patent claims.[3] And unlike in *inter partes* review, patentees undergoing reexamination enjoy an unfettered right to amend patent claims, provided they are narrowing amendments. *In re Cuozzo*, 2015 U.S. App. LEXIS 1699, at *35 (Newman, J., dissenting). In another distinction, unlike during *inter partes* review, during reexamination patentees must disclose all known material prior art. 37 C.F.R. § 1.555(a). The outcome of reexamination will either confirm patent claims over the reexamination prior art (either as originally written or as amended), or will cancel them. *Id.* § 1.570. The USPTO will issue a "reexamination certificate," which becomes an official part of the patent document from then on. *Id.*

## V.    SUMMARY OF THE ARGUMENT

That *inter partes* review is clearly unconstitutional makes the application of administrative exhaustion improper. That same showing also entitles Appellants to relief on the merits. This Court should reverse and direct entry of judgment for Appellants.

Nothing demonstrates the district court's error better than the absence of any citation to *McCormick* (or related Supreme Court authority) in its

---

[3] Sue A. Purvis, "The Role of a Patent Examiner," at 8 http://www.uspto.gov/sites/default/files/about/offices/ous/04082013_StonyBrookU.pdf (last visited February 27, 2015) (identifying as one of the roles of an examiner to "[h]elp applicant identify allowable subject matter").

opinion. Since *inter partes* review is an adjudicatory proceeding between private parties within an Executive agency, and is designed to cancel and invalidate issued patents, it falls squarely under *McCormick's* prohibitions.

Nor can legal theories that saved *ex parte* reexamination procedures from constitutional infirmity save *inter partes* review. Courts developed a legal fiction to save *ex parte* reexamination that simply does not apply to *inter partes* review – that such procedures just re-do the granting and examination process. By the PTAB's own admission, *inter partes* review involves adjudication between litigating opponents in front of a panel of judges, not examination by a technologically trained patent examiner whose mandate includes identifying allowable subject matter.

## VI.    ARGUMENT

### Standard of Review

This Court reviews all issues here *de novo*, including application of administrative exhaustion. *Talbot v. Lucy Corr Nursing Home*, 118 F.3d 215, 218 (4th Cir. 1997).

### Discussion

This brief first assumes for the sake of argument, in subsections VI.A.-C. that some form of administrative exhaustion applies, and explains why an exception to the application of administrative exhaustion known as

the "clear right" exception waives or excuses exhaustion. Later, in subsection VI.D., this brief will explain why administrative exhaustion should not apply in the first instance as a matter of law.[4] Either way, the district court erred.

As the district court acknowledged, "when a statute is 'patently unconstitutional' or an agency has taken a *clearly* unconstitutional position," administrative exhaustion does not apply to bar a litigant's challenge of an agency procedure. (*Cooper*, 2015 U.S. Dist. LEXIS 19419, at *16, citing *Thetford Props. IV Ltd. P'Ship v. HUD*, 907 F.2d 445, 448-49 (4th Cir. 1990) and *Ticor Title Ins. Co. v. FTC*, 814 F.2d 731, 740 (D.C. Cir. 1987)). In fact, this Court has not required exhaustion when the administrative agency in question could not decide the constitutional question. "[T]he adjudication of the constitutionality of legislative enactments has generally been thought beyond the jurisdiction of administrative agencies." *S. Carolina Citizens for Life, Inc. v. Krawcheck*, 301 Fed. Appx. 218, 222 (4th

---

[4] Importantly, there exists another exception that the district court overlooked in its opinion – that requiring Appellants to exhaust will cause irreparable harm. *See McCarthy*, 503 U.S. at 147. As explained in district court briefing, the very process of *inter partes* review, once trial is instituted, places a cloud over the validity of Appellants' patents. (ECF No. 24, at 24-25). The district court overlooked this argument, mistakenly believing that Appellants based irreparable harm arguments on mere "litigation expenses." *Cooper*, 2015 U.S. Dist. LEXIS 19419, at *19. But as the district court briefing shows, that was not so.

Cir. 2008) (unpublished opinion) (citing *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 215 (1994) (waiving exhaustion and finding ripe the plaintiff's facial challenge because it sought "adjudication of the constitutionality of two provisions of state law, *not judicial review of the Commission's actions*.") (emphasis added)).

The district court here erred in failing to apply this exception to exhaustion, instead requiring Appellants to exhaust agency procedures that cannot even begin to grant them the relief requested of the district court. The clarity of the constitutional violation follows from simple comparison of *inter partes* review to the relevant Separation of Powers and Seventh Amendment principles that apply.

**A.  The Supreme Court Has Always Treated Patent Invalidation, Whether for Land or Invention Patents, as Subject Solely to the Judicial Power under Article III**

A patent, upon issuance, is not subject to revocation or cancellation by any executive agent (*i.e.*, the USPTO or any part of it, such as the PTAB). *McCormick*, 169 U.S. at 609. While *ex parte* reexamination has so far been held to avoid a Separation of Powers bar, *see Patlex Corp. v. Mossinghoff*, 758 F.2d 594 (Fed. Cir. 1985), that decision rested on classification of the *grant* of a patent right in the reexamination context as a "public" right. *See Joy Techs., Inc. v. Manbeck*, 959 F.2d 226 (Fed. Cir. 1992), *cert. denied*, 506

U.S. 829 (1992) (confirming that it is the "grant" or "issuance" of a patent that is a public right, not the revocation or invalidation of previously granted private property).

The Supreme Court decided on numerous occasions during the nineteenth century that a patent for either invention or land, once issued, has left the authority of the granting office. Patents for invention and patents for land are treated the same way under the relevant law. "The power . . . to issue a patent for an invention, and the authority to issue such an instrument for a grant of land, emanate from the same source, and although exercised by different bureaus or officers under the government, are of the same nature, character and validity . . . ." *United States v. Am. Bell Tel. Co.*, 128 U.S. 315, 358-59 (1888) (comparing Art. I, § 8, para. 8, with Art. IV, § 3, para. 2). "A patent for an invention is as much property as a patent for land. The right rests on the same foundation and is surrounded and protected by the same sanctions." *Patlex*, 758 F.2d at 599 (citing *Consolidated Fruit Jar Co. v. Wright*, 4 Otto 92, 96, 94 U.S. 92, 96 (1876)).

The United States Supreme Court has repeatedly and emphatically held that it is an unconstitutional encroachment on Article III courts for the Executive to affect an issued patent in any way. For example, in 1888 the Court stated in *American Bell*:

> A patent is the highest evidence of title, and is conclusive as against the Government, and all claiming under junior patents or titles, until it is set aside or annulled by some *judicial tribunal*. . . . Patents are sometimes issued unadvisedly or by mistake, where the officer has no authority in law to grant them, or where another party has a higher equity and should have received the patent. *In such cases courts of law will pronounce them void*. The patent is but evidence of a grant, and the officer who issues it acts ministerially and not judicially. If he issues a patent for land reserved from sale by law, such patent is void for want of authority. But *one officer of the Land Office is not competent to cancel or annul the act of his predecessor. That is a judicial act, and requires the judgment of a court*.

*Am. Bell*, 128 U.S. at 365 (emphasis added) (citing *United States v. Stone*, 2 Wall. 525, 69 U.S. 525, 535 (1864)). Importantly, *American Bell* addressed patents for invention, but the Court discussed extensively the analogousness of patents for land. *See id.* at 358-59. The Court revisited the issue ten years later in *McCormick*, and underscored the importance of this foundational principle. Specifically, the Court held that it is an invasion of the province of Article III courts for the Executive branch to cancel a patent as invalid upon the patentee's application for reissue. *McCormick*, 169 U.S. at 612. However, the opinion makes clear that the Court's reasoning is not limited to reissuance proceedings.

> [W]hen a patent has received the signature of the Secretary of the Interior, countersigned by the Commissioner of Patents, and has had affixed to it the seal of the Patent Office, *it has passed beyond the control and jurisdiction of that office, and is not subject to be revoked or cancelled by the President, or any other officer of the Government. United States v. Am. Bell*

> *Telephone Co.*, 128 U.S. 315, 363. It has become the property of the patentee, and as such is entitled to the same legal protection as other property.

*Id.* at 608-09 (additional citations omitted).[5] Although "*a suit* may be maintained by the United States to set aside a patent for lands improperly issued by reason of mistake, or fraud[, even *that* is only] the case where the Government has a direct interest, or is under obligation respecting the relief invoked." *Id.* at 609 (emphasis added) (citing *United States v. Missouri, Kansas & Texas Railway*, 141 U.S. 358 (1891)). The Executive therefore cannot cancel or amend an issued patent in any way without going through Article III courts. The *McCormick* Court continued:

> The only authority competent to set a patent aside, or to annul it, *or to correct it for any reason whatever*, is vested in the courts of the United States, and not in the department which issued the patent. *Moore v. Robbins*, 96 U.S. 530, 533; *United States v. Am. Bell Telephone Co.*, 128 U.S. 315, 364; *Michigan Land & Lumber Co. v. Rust*, 168 U.S. 589, 593. And in this respect a patent for an invention stands in the same position and is subject to the same limitations as a patent for a grant of lands.

*Id.* (emphasis added).

The Court disposed of a virtually identical question multiple times in the land context prior to both *McCormick* and *American Bell*, reaching the

---

[5] Patentees themselves commence reissue proceedings and offer to "surrender" their patents when they do. But here, third parties commence *inter partes* reviews. If anything, the involuntary nature of *inter partes* review makes the Separation of Powers issue even stronger than it was in *McCormick*.

same conclusion. For example, in *United States v. Stone*, the Court discussed an Article I tribunal's authority to void a patent for land where evidence of fraud, mistake, or absence of legal authority was presented. 69 U.S. 525 (1864). The Court unequivocally rejected this argument, and, as cited above, *Stone*'s reasoning applied to protect patents for invention against the same type of Executive overreaching in *American Bell* more than twenty years later.

In 1878, the Court decided *Moore v. Robbins*, which centered on whether the Secretary of the Interior could rescind a patent for land where multiple parties claimed ownership over the same tract. 96 U.S. 530 (1877). The Court was similarly unwavering in its reasoning:

> While conceding for the present . . . that when there is a question of contested right between private parties to receive from the United States a patent for any part of the public land, it belongs to the head of the Land Department to decide that question, *it is equally clear that when the patent has been awarded to one of the contestants, and has been issued, delivered, and accepted, all right to control the title or to decide on the right to the title has passed from the land-office. Not only has it passed from the land-office, but it has passed from the Executive Department of the government*. A moment's consideration will show that this must, in the nature of things, be so. . . . With the title passes away all authority or control of the Executive Department over the land, and over the title which it has conveyed. *It would be as reasonable to hold that any private owner of land who has conveyed it to another can, of his own volition, recall, cancel, or annul the instrument* which he has made and delivered. If fraud, mistake, error, or wrong has been done, the courts of justice present the only

> remedy. *These courts are as open to the United States to sue for the cancellation of the deed or reconveyance of the land as to individuals; and if the government is the party injured, this is the proper course*.

*Id.* at 532-33 (emphasis added). The Court restated this principle yet again in 1890 to prevent officers of the Land Department from requiring two competing land owners to appear regarding the patents' validity. *See Iron Silver Mining Co. v. Campbell*, 135 U.S. 286, 293 (1890) ("[Patent validity] is *always* and ultimately a question of judicial cognizance.") (emphasis added). The *Iron Silver* Court elaborated:

> We have more than once held that when the government has issued and delivered its patent for lands of the United States, the control of the department over the title to such land has ceased, and the only way in which the title can be impeached is by a bill in chancery; and we do not believe that, as a general rule, the man who has obtained a patent from the government can be called to answer in regard to that patent before the officers of the land department of the government.

*Id.* at 301-02 (citing *Ex parte Schurz*, 102 U.S. 378 (1880)).

In each of these cases, the dispute centered on a patent for either invention or land that was arguably invalid due to a mistake in the office from which it originated. Granting the same piece of land to two separate individuals is a particularly egregious example of such a governmental mistake. But the Court's treatment remained consistent: even mistake on the

21

part of the granting office does not in any way excuse a violation of Separation of Powers principles.

Nor can this unambiguous controlling Supreme Court authority be brushed aside. The district court did not try to distinguish it. Nowhere in its opinion does it cite, much less distinguish, these clear constitutional prohibitions against the Executive attempting to cancel (or adjudicate the validity of) an issued patent. Since *inter partes* review clearly violates Separation of Powers principles, the district court erred in refusing to adjudicate its unconstitutionality.

Recent Supreme Court activity confirms the need to hold *inter partes* review unconstitutional. In *B&B Hardware v. Hargis Industries*, No. 13-352, Slip Op. (U.S. Mar. 24, 2015), Justices Thomas and Scalia *sua sponte* raised the issue of the constitutionality of giving preclusive effect to agency decisions involving private rights so as to effectively deprive the party of a right to a trial in an Article III court and to a jury. Justice Thomas dissenting, at 10-14.

> Because federal administrative agencies are part of the Executive Branch, it is not clear that they have power to adjudicate claims involving core private rights. Under our Constitution, the "judicial power" belongs to Article III courts and cannot be shared with the Legislature or the Executive. *Stern v. Marshall*, 564 U. S. ___, ___–___ (2011) (slip op., at 16-17); see also *Perez*, ante, at 8-11 (opinion of THOMAS, J.). And some historical evidence suggests that the adjudication of

22

> core private rights is a function that can be performed only by Article III courts, at least absent the consent of the parties to adjudication in another forum.

*Id*. at 11. The majority in *B&B Hardware* did not address the constitutional issue because it was not raised below. Majority Opinion, Slip. Op. at 10-11. The Court also suggested that the availability of *de novo* review was enough to cure the constitutional defect. *Id.* at 13. In the case of *inter partes* review, no district court *de novo* trial right exists. The district court in *Patlex Corp., Inc. v. Mossinghoff*, 585 F. Supp. 713, 725 (E.D. Pa. 1983), upheld the constitutionality of *ex parte* reexamination in part because its results are subject to a *de novo* district court trial.

The Supreme Court has explained the harm to the rule of law that arises whenever persons other than Article III judges wield the judicial power. *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 459 U.S. 50, 60-61 (1982). Lifetime tenure and the prohibition against salary reduction insulate Article III judges from political influence. *See id.* at 64; *In re Mankin*, 823 F.2d 1296, 1309 (9th Cir. 1987) ("The purpose of the lifetime tenure / no salary diminution requirement of Article III is in part to ensure that federal judges are independent of political pressure from the other branches of government."). Senate confirmation guarantees the most thorough vetting possible, and ensures that only independent jurists preside

over cases. *Republican Party of Minn. v. White*, 536 U.S. 765, 795 (2002) (Kennedy, J., concurring) ("[T]he design of the Federal Constitution, including lifetime tenure and appointment by nomination and confirmation, has preserved the independence of the Federal Judiciary.").

These protections do not exist for administrative personnel who work within the hierarchy of the Executive branch, and serve at the whim of agency heads, the President, or even Congress. Agency capture – to which federal courts are immune – has also crept into PTAB outcomes. *See* Daily and Kieff, *supra* n.1. In addition, the Judiciary has always supervised and adjudicated any deprivation of private property rights by the government. Only the Judiciary has historically been imbued with the power to adjudicate condemnation proceedings for takings, seizure of criminal proceeds, nullification of land grants, and (until recently) invalidation of issued patents. Placing such judicial power in the hands of personnel who work for the Executive offends the Constitution's reservation of such power to the Judicial branch.

**B. Adjudications of Validity are Seventh Amendment-Protected Private Rights**

*Inter partes* reviews involve adjudication of patent validity, as just stated. They therefore violate the Seventh Amendment because they deprive patentees of jury trials. The Federal Circuit in *Patlex* excused *ex parte* patent

reexaminations in the USPTO from the jury trial right only because "the *grant* of a valid patent is primarily a public concern." *Patlex*, 758 F.2d at 604 (emphasis added). Note that the public "right" was the public's "interest" in ensuring that the patent was properly *granted*. *Id.* The court held that because reexamination is directed to "correct errors made by the government, to remedy defective governmental (not private) action, and if need be to remove patents that should never have been granted," *id.*, re-doing the *examination process* qualified as a public right. The Court in *Joy* repeated this rationale. 959 F.2d at 228. Even assuming this legal fiction may survive scrutiny under *McCormick*, it simply does not apply here.

*Inter partes* reviews lack the very thing that allowed *ex parte* reexamination to pass muster: a legal fiction that the USPTO is restarting the examination process by patent examiners to correct a governmental mistake. The PTAB conducts a court-like trial between adversaries without the protections enjoyed by Article III courts (*e.g.*, life tenure, protection against salary reduction and involvement of the political process, and senate confirmation in appointments). For example, the trial includes initial scheduling orders, mandatory notices, initial disclosures modeled after Fed. R. Civ. P. 26(a)(1), depositions, additional discovery as the USPTO determines is otherwise necessary "in the interest of justice," cross-

25

examination, compelled testimony and document production, oral argument, as well as objections, motions *in limine*, motions to exclude arguably inadmissible evidence, and oral argument. After the parties have finished the entire adversarial process, the Judicial Panel issues a decision, which may cancel the patent.

In sum, *inter partes* review is virtually identical to what would happen if the party challenging the validity of the patents chose to bring a declaratory judgment action in an Article III court instead. The Federal Circuit in *Joy* stated that a private right involves the liability of one individual to another, which contrasts with cases that "arise between the Government and persons subject to its authority in connection with the performance of the constitutional functions of the executive or legislative departments." *Joy Techs.*, 959 F.2d at 229 (internal quotation marks omitted) (citing *Crowell v. Benson*, 285 U.S. 22, 50 (1932)). *Inter partes* review is the epitome of a private dispute, and was designed by Congress to lack the features of reexamination that made the latter a proceeding just between the Government and a person. The PTAB assumes that the adversaries will bring the best prior art, and does not conduct any examination as part of the proceedings. Its decision is based entirely on the parties' arguments, to such an extent that patentees are not subject to the duty of disclosure like they are

in reexamination. This stands in stark contrast to *ex parte* reexaminations, which were the only USPTO proceedings considered in *Patlex* and *Joy*.

This is also why Appellants' Seventh Amendment rights are being abridged in a way not present in *Patlex* or *Joy*. The Seventh Amendment protects the right to a jury trial on issues of patent validity that may arise in a suit for patent infringement. *Patlex* 758 F.2d at 603 (citing *Swofford v. B & W, Inc.*, 336 F.2d 406 (5th Cir. 1964), *cert. denied*, 379 U.S. 962 (1965)). "Congress may devise *novel* causes of action involving public rights free from the strictures of the Seventh Amendment if it assigns their adjudication to tribunals without statutory authority to employ juries as factfinders. But it lacks the power to strip parties contesting matters of private right of their constitutional right to a trial by jury." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 51-52 (1989) (emphasis added). Stated another way, the public rights exception cannot apply where a right has a long line of common-law jury-trial forebears. *Id.* at 52. "The Constitution nowhere grants Congress such puissant authority." *Id.* Instead, the claim must "originate in a newly fashioned regulatory scheme." *Id.*

"[T]he Seventh Amendment . . . applies to actions brought to enforce statutory rights that are analogous to common-law causes of action ordinarily decided in English law courts in the late 18th century . . . ." *Id.* at

41-42 (citing *Curtis v. Loether*, 415 U.S. 189, 193 (1974) (internal quotation marks omitted). Since *Tull v. United States*, courts look to whether the claim involves legal, or equitable remedies. 481 U.S. 412, 417 (1987) (stating that Seventh Amendment requires a jury trial on the merits in actions that are analogous to "Suits at common law.").  In making this determination, the Court must examine both the nature of the action and of the remedy sought. *Id.*

Patent infringement suits have a long history in the common law, and thus of a jury trial right. *See, e.g.*, *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 377 (1996) ("Equally familiar is the descent of today's patent infringement action from the infringement actions tried at law in the 18th century, and there is no dispute that infringement cases today must be tried to a jury, as their predecessors were more than two centuries ago.") (citation omitted); *In re Lockwood*, 50 F.3d 966, 976 (Fed. Cir. 1995), *vacated*, 515 U.S. 1182 (1995)[6] (holding jury trial right applies to adjudication of patent validity, discussing eighteenth- and nineteenth-century patent adjudication in England and the United States); *In re Tech. Licensing Corp.*, 423 F.3d 1286,

---

[6] "After a grant of certiorari was mooted, *Lockwood* was vacated by the Supreme Court without explanation. However, the Federal Circuit repeatedly confirmed the vitality of *Lockwood's* reasoning in subsequent cases." *MedImmune, Inc. v. Genentech, Inc.*, 535 F. Supp. 2d 1020, 1027 (C.D. Cal. 2008) (citations omitted).

1289 (Fed. Cir. 2005) (citing *Lockwood* for the proposition that under both English and American practice it was the patentee who decided whether a jury trial on the factual questions relating to validity would be compelled.).

In analyzing whether a right to a jury trial exists in a particular patent case, courts look to whether it most closely resembles an action at law, or in equity. *See In re Lockwood*, 50 F.3d at 974. Although the Federal Circuit in *Joy* rejected the appellant's argument that a reexamination proceeding is most like a declaratory judgment action filed by the USPTO, and should therefore be treated the same way (and require a jury as factfinder), that was only because the appellant conceded that the USPTO could not have brought such a suit. *Joy Techs.*, 959 F.2d at 229. In contrast, an *inter partes* review is virtually identical to a declaratory judgment action for an invalidity finding filed by the petitioner, which is analyzed by looking at whether a jury would be available if the case were inverted. *See In re Lockwood*, 50 F.3d at 972. This means that even the analysis of *Joy* leads to a conclusion of constitutional infirmity for adversarial *inter partes* reviews, at least in the context of a simultaneous legal claim against the petitioner for patent infringement damages.

Thus, not only does *inter partes* review violate Separation of Powers principles. It also violates the patentees' right to a jury trial under the Seventh Amendment.

### C.    The District Court Did Not Succeed in Its Attempt to Fit *Inter Partes* Review Under the Holdings of *Patlex* or *Joy*

The district court came to the opposite conclusion, but only after committing mistakes of law and analysis. The district court concluded that *inter partes* review "mirrors" *ex parte* reexamination "in three key ways." *Cooper*, 2015 U.S. Dist. LEXIS 19419, at *17-18. According to the district court, these "three key ways" meant that *Patlex* and *Joy* may be extended to keep *inter partes* review from failing constitutional scrutiny. Instead, the "three key ways" identified by the district court are either wrong or do not lead to a conclusion of constitutional validity. And each of them ignores the true rationale of *Patlex* and *Joy*, while turning a blind eye to the controlling *McCormick* decision.

The district court first stated that both procedures "authorize the PTO to review the validity of an issued patent despite the availability of federal court review of that patent." *Id.*, 2015 U.S. Dist. LEXIS 19419, at *17. In fact, this is true only of *inter partes* review. As the Federal Circuit was careful to explain in *Patlex* and *Joy*, *ex parte* reexamination is imbued with the legal fiction that it is *not* a review of patent validity, but instead is a re-do

by patent examiners of the "grant" or "issuance" process. *See Patlex Corp.*, 758 F. 2d at 604; *Joy Techs.*, 959 F.2d at 228. The same cannot be said of *inter partes* review – a procedure where adversaries litigate over the validity of a patent before a panel of judges.

The district court next stated that both procedures "do not give an issued patent a presumption of validity and construe the claims of an issued patent using their broadest reasonable interpretation." *Cooper*, 2015 U.S. Dist. LEXIS 19419, at *18. The first part of this statement is actually false, because there is still a "preponderance" burden that must be met by the respective examiner or petitioner to prove unpatentability. But whether true or not, the entire rationale is irrelevant. The two procedures differ so that *Patlex* and *Joy* cannot be extended. A legal fiction has so far protected *ex parte* reexamination by treating it as a re-do of the examination and granting process. This characterization cannot fit *inter partes* review. No examiners are involved – only private litigants and judges. That means that the Federal Circuit's only attempt at a rationale for distinguishing *McCormick* is simply unavailable when considering *inter partes* review. The lowered standard of proof and relaxed claim interpretation standards do disadvantage patentees equally, but they have nothing to do with how *Patlex* and *Joy* examined the constitutional issues that apply.

The district court's final "key way" to shoehorn *inter partes* review under the *Patlex* and *Joy* precedent is the weakest of all. The district court explained that "both *ex parte* reexamination and *inter partes* review allow for Article III judicial review of the PTAB's decision at the conclusion of the administrative proceedings." *Id*, 2015 U.S. Dist. LEXIS 19419, at *18. However, the availability of deferential Article III appellate review of agency procedures is forbidden as a rationale to sidestep a violation of the Separation of Powers or Seventh Amendment requirements. *Northern Pipeline*, 459 U.S. at 86 n.39. Therefore it, too, is legally irrelevant.

In short, the district court, at best, identified only incorrect or legally irrelevant similarities between *ex parte* reexamination and *inter partes* review. No legitimate way exists to sidestep the constitutional infirmities of *inter partes* review. It certainly cannot be shoehorned under *Patlex* and *Joy*, which are themselves of uncertain vitality in view of *McCormick*. The district court's efforts thus cannot avoid the obvious fact that *inter partes* review constitutes adversarial adjudication before administrative judges of a private right that, since it is protected by the Seventh Amendment when there is a preexisting claim for damages, must be tried before a jury. *McCormick* and related Supreme Court precedent forbid Congress's or the

President's placement of such judicial power before an agency of the Executive.

For these reasons, the district court did not support the absence of the undisputed exception to administrative exhaustion of a "clear constitutional violation."

### D.    Administrative Exhaustion Should Not Apply Here

Even if the "clear right" exception were unavailable, the district court still erred. It should not have required exhaustion of administrative remedies, at the outset. Exhaustion does not apply as a threshold matter, either via Congressional directive or after application of prudential considerations. This Court reviews decisions on "administrative exhaustion" *de novo*. *Nationsbank Corp. v. Herman*, 174 F.3d 424, 428 (4th Cir. 1999).

Though the district court was correct that exhaustion of administrative remedies might be appropriate for *some* kinds of constitutional claims (*i.e.*, certain as-applied challenges), it avoided a proper analysis of *these particular* constitutional claims (a facial challenge). The complaint here raises only two grounds – that *inter partes* review violates the Separation of Powers requirement and the Seventh Amendment. These are facial challenges. This Court has never applied administrative exhaustion to bar or

delay adjudication of the facial unconstitutionality of an act of the legislature. In fact, the opposite is true.

The district court overlooked the only apposite Fourth Circuit decision. In *Citizens for Life*, 301 Fed. Appx. at 222 n.6 (unpublished opinion), this Court waived exhaustion and found ripe the plaintiff's facial challenge. The plaintiff sought "adjudication of the constitutionality of two provisions of state law, *not judicial review of the Commission's actions.*" *Id.* at 222 (emphasis added). Instead of applying the principles in *Citizens for Life*, the district court cited inapposite Fourth Circuit decisions. As discussed below, those decisions required exhaustion only where plaintiffs brought "as-applied" constitutional challenges, and where factfinding for those challenges would be within the scope of agency expertise.

Decisions like *Citizens for Life* follow the Supreme Court's directive that, notwithstanding whatever institutional interests an agency might invoke, "federal courts are vested with a virtually unflagging obligation to exercise the jurisdiction given them." *McCarthy v. Madigan*, 503 U.S. 140, 146 (1992) (citation and internal quotation omitted). "Of paramount importance to any exhaustion inquiry is congressional intent. Where Congress specifically mandates, exhaustion is required. But where Congress has not clearly required exhaustion, sound judicial discretion governs . . . ." *Id.* at

144 (citations and internal quotation marks omitted). Thus only two possible ways might justify a finding that administrative exhaustion applies – a clear Congressional directive that the exact issue being litigated must first be addressed through the administrative agency, or a determination that exhaustion would "serve[] the twin purposes of protecting administrative agency authority and promoting judicial efficiency" (*i.e.*, "prudential" exhaustion). *Id.* at 145. Neither applies here.

### 1.    No Express Exhaustion

Here, no clear Congressional directive mandates exhaustion of Separation of Powers or Seventh Amendment challenges. For such a directive to apply, "a statute must contain sweeping and direct statutory language indicating that there is no federal jurisdiction prior to exhaustion, or the exhaustion requirement is treated as an element of the underlying claim." *Hettinga v. United* States, 560 F.3d 498, 503 (D.C. Cir. 2009) (internal quotations and alterations omitted) (quoting *Weinberger v. Salfi*, 422 U.S. 749, 757 (1975)). Explicit language mandating exhaustion in one area does not carry over to mandate exhaustion in another. For example, a statutory requirement for exhaustion before a challenge to a final agency order does not raise an inference that Congress required exhaustion for a facial constitutional challenge. *Id.* at 503-04 (holding that requirement of

exhaustion for milk handlers' challenges of milk marketing orders under the AMAA did not apply to facial constitutional challenges by milk producer-handlers to a statutory amendment).

The district court incorrectly found authority for Congressionally-mandated exhaustion in express language, statutory PTAB procedures, and the mechanism for review of final written decisions. *Cooper*, 2015 U.S. Dist. LEXIS 19419, at *11 (citing *Versata Dev. Corp. v. Rea*, 959 F. Supp. 2d 912, 919-20 (E.D. Va. 2013)). The district court misunderstood all three. Therefore, mandated exhaustion does not apply.

The "express language" to which the district court referred forecloses judicial review only of the initial PTAB decision on whether to institute a trial. *Id., citing* 35 U.S.C. § 314(d). It does not address facial constitutional challenges. It is therefore irrelevant. *See Hettinga*, 560 F.3d at 503-04. That should be the end of the inquiry, because of the absence of a "clear" requirement that "specifically" mandates exhaustion for constitutional challenges. *See McCarthy*, 503 U.S. at 144. The district court should not have even reached the other two rationales (statutory procedures and review mechanisms). But even if considered, they too do not support the district court's result.

The "detailed procedures" named by the district court (which it also labeled a "detailed scheme") simply refer to the eight statutory sections that govern *inter partes* review. *Cooper*, 2015 U.S. Dist. LEXIS 19419, at *11-12. This only proves the bland fact that Congress established the procedure and established direct review of final written decisions. If this were enough to qualify as "sweeping and direct" language that clearly and specifically requires exhaustion of all facial constitutional claims, then every federal program would always require exhaustion. Such reasoning turns the entire analysis on its head. Mandated exhaustion requires express statutory language supporting it; it is not the plaintiff's burden to show that statutory language explicitly *forecloses* exhaustion.

Likewise, Appellants are not challenging "final agency action in federal court," as the district court seemed to assume when it quoted this Court's decision in *Volvo GM Heavy Truck Corp. v. Dep't of Labor*, 118 F.3d 205, 211-12 (4th Cir. 1997). *Cf. Cooper*, 2015 U.S. Dist. LEXIS 19419, at *12. Nothing about Appellant's lawsuit seeks to review or overturn the merits of any decision by the PTAB. It is instead a facial challenge to the attachment of the process itself to the parties. *Public Utilities Commission of California v. United States*, 355 U.S. 534, 539 (1958) (no exhaustion where the "only question is whether it is constitutional to fasten the administrative

37

procedure onto the litigant . . . .”). Again, Appellants raise a facial constitutional challenge that does not depend on whatever the PTAB has done to date or might state in its final written decision.

Finally, the district court also erred by inferring some sort of clear directive for exhaustion just because there exists a judicial review mechanism, whereby the Federal Circuit reviews “final written decisions” (and only final written decisions). *See* 35 U.S.C. § 319. This statutory language does not mention any power to review agency “actions” apart from such written decisions, nor does it directly address constitutional questions. Even where Congress has established a comprehensive administrative review structure meant to be exclusive, district court jurisdiction over claims challenging agency action is precluded *only* to the extent that the claims asserted “are *of the type* that Congress intended to be reviewed within this statutory structure.” *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212 (1994) (emphasis added). And, claims that are “wholly collateral to a statute’s review provisions and outside the agency’s expertise” are *not* of the type precluded by an implicitly exclusive administrative review mechanism. *Id.* at 212-13 (internal quotation marks omitted). Principal among the types of “wholly collateral” claims that remain within the district court’s jurisdiction are facial constitutional challenges. *See, e.g.*, *McNary v. Haitian*

*Refugee Ctr. Inc.*, 498 U.S. 479, 492 (1991); *Mathews v. Eldridge*, 424 U.S. 319, 330 (1976); *Johnson v. Robison*, 415 U.S. 361, 373 (1974).

Here, *inter partes* review direct appeals to the Federal Circuit reach no further than appeal from the "final written decision." 35 U.S.C. § 319. This appellate-scope language does not include plenary review language sometimes found elsewhere that permits *all* issues about an agency's procedures to receive direct-review appellate treatment. *Cf. Elgin v. Dep't of the Treasury*, 132 S. Ct. 2126, 2130-31 (reviewing court may set aside "any" agency action not in accordance with law). Therefore, the mere fact of a limited judicial review mechanism proves nothing about Congressional intent to mandate exhaustion for facial constitutional challenges.[7]

For the foregoing reasons, in all three of its rationales, the district court erred to find Congressional intent that exhaustion should apply.

---

[7] This Court observed that in *Elgin*, the Supreme Court explained *subject matter jurisdiction* principles as follows: "'where Congress simply channels judicial review of a constitutional claim to a particular court,' the appropriate inquiry is 'whether Congress's intent to preclude district court jurisdiction [is] fairly discernible in the statutory scheme.'" *Blitz v. Napolitano*, 700 F.3d 733, 740 (4th Cir. 2012) (*quoting Elgin*, 132 S. Ct. at 2132). Here, the district court ruled based on exhaustion, not subject matter jurisdiction. And in any case, *Elgin* would not call jurisdiction into question, since 35 U.S.C. § 319 contains no language to "channel" constitutional claim judicial review into the Federal Circuit. *See generally Free Enterprise Fund v. Pub. Co. Accounting Oversight Bd.*, 130 S. Ct. 3138 (2010) (reaching Separation of Powers issue and finding violation after determining that appellate review provision did not cover facial constitutional challenge).

## 2.    No Prudential Exhaustion

Though the district court did not address prudential exhaustion as such, its reasoning conflates some of the "express" exhaustion concepts with prudential exhaustion. Prudential exhaustion might be required even absent express exhaustion if it "serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency." *McCarthy*, 503 U.S. at 145. The primary concern is to find the proper balance between interests of the individual in invoking judicial review by the court system, and interests of the institution in efficient operations. *Id.* Three possible grounds exist for rejecting the application of prudential exhaustion. *Id.* at 146-49; *see also Volvo GM*, 118 F.3d at 211 n.8 (citing *McCarthy* factors). They are where:

> (1) it would occasion undue prejudice to subsequent assertion of a court action, for example through excessive delay; (2) an agency may not be empowered to grant relief, for example "because it lacks institutional competence to resolve the particular type of issue presented, such as the constitutionality of a statute" or because "an agency may be competent to adjudicate the issue presented, but still lack authority to grant the type of relief requested;" or (3) the agency is biased.

*Hettinga*, 560 F.3d at 503 (quoting *McCarthy*). Here, at least factors (2) and (3) apply to prevent the threshold application of prudential exhaustion.

First, the PTAB lacks institutional competence to resolve the facial constitutional challenge to its enabling legislation. Its mandate is to issue a final written decision on patent validity, not to question its own existence.

> Similarly explicable are those cases in which challenge is made to the constitutionality of the administrative proceedings themselves. . . . Exhaustion in those situations would similarly risk infringement of a constitutional right by the administrative process itself.

*Moore v. City of East Cleveland*, 431 U.S. 494, 528 n.3 (1977) (internal citations omitted); *see also Hettinga*, 560 F.3d at 506 (finding no prudential exhaustion because "[t]he Secretary lacks the power either to declare provisions of the MREA unconstitutional, or exempt the Hettingas from the requirements of the milk marketing order as imposed by the MREA.").

Second, the PTAB is biased. After briefing closed in the district court, the PTAB made its view known that, even if it had the power to abnegate itself, it believes that the initiation and litigation of an *inter partes* review does not violate the patentee's Seventh Amendment rights. *See*, *e.g.*, *Garmin Int'l, Inc. v. MSPBO, LLC*, IPR2014-01379, Paper 11 at 9-10 (PTAB March 3, 2015) (Final Written Decision); *Hewlett-Packard Company v. MCM Portfolio, LLC*, IPR2013-00217, Paper 31, at 4-5 (PTAB August 6, 2014) (Final Written Decision). In so stating, however, the PTAB reasoned that an *inter partes* review was essentially the same as a reexamination—which, as

41

found in the PTAB's admissions in *ScentAir* and discussed generally above, it is not. By its recent decisions, the PTAB has foreclosed any constitutional challenges to the *inter partes* review procedures at the administrative level.

Thus, for these reasons, just as the D.C. Circuit observed in *Hettinga*, "[r]equiring exhaustion . . . would neither 'protect[] administrative agency authority' nor 'promot[e] judicial efficiency.'" *Hettinga*, 560 F.3d at 506. Prudential exhaustion simply does not apply to this facial constitutional challenge to a statute. Nor have any of this Court's prior decisions permitted such a perverse result.

### 3.    The District Court's Decisions are Distinguishable

Though the district court cited several of this Court's prudential exhaustion decisions for the proposition that exhaustion might apply to constitutional claims, none of those decisions involved facial constitutional challenges to a statute. They involved as-applied challenges. Of course, facial challenges are exactly what the Supreme Court's *McCarthy* decision expressly carves out. But the district court lost sight of this controlling Supreme Court law.

For example, two of the district court's cited Fourth Circuit decisions applied exhaustion to challenges attacking federal contractor affirmative action enforcement. *See Cooper*, 2015 U.S. Dist. LEXIS 19419, at *14-15,

*citing Nationsbank*, 174 F.3d at 429 and *Volvo GM*, 118 F.3d at 215. The *Nationsbank* plaintiff presented a Fourth Amendment unreasonable search challenge, based on the apparent arbitrariness of the Department of Labor's identification of particular bank branches for investigation and enforcement. The *Volvo GM* plaintiff presented a Fifth Amendment due process challenge, based on the unreasonable delay implicit in bringing enforcement proceedings after expiration of a putative statute of limitations. In each case, "reasonableness" of agency action was at issue, and therefore the agency was empowered to develop the factual record surrounding its actions. The constitutional challenge was neither facial, nor to the statute *per se*. *McCarthy* therefore did not apply, and this Court unsurprisingly held that the record developed within the administrative process would assist in the possible later adjudication of the constitutional claim. *Nationsbank*, 174 F.3d at 430 n.4; *Volvo GM*, 118 F.3d at 214-15. That is not possible here.

*Nationsbank* and *Volvo GM* did, at least, involve plaintiffs who (like Appellants here) could not initiate administrative proceedings to seek relief for themselves. The agency had filed actions *against* them, just as here where Appellants are respondents who simply hold a patent, adverse to petitioners who went to the Executive to invalidate it. The rest of the cited Fourth Circuit decisions by the district court are even more inapposite. They

involve as-applied constitutional challenges by a plaintiff who could have (and this Court held should have) initiated a procedure to procure an administrative remedy for itself. While prudential exhaustion applied in those cases, their rationale does not carry over.

For example, in *Thetford Props IV Ltd. P'Ship v. HUD*, the plaintiffs were affordable housing property owners who felt aggrieved by emergency legislation that imposed new barriers to block their previously unfettered ability to exit HUD's affordable housing programs. 907 F.2d at 447. They raised as-applied due process challenges. The *Thetford* court stated that the statute was clear, "HUD has the authority to grant them the ultimate economic relief that they seek . . . ," *id.* at 448, which in that case was their right to exit the program by prepaying a mortgage. The court concluded that "requiring exhaustion . . . may very well lead to a satisfactory resolution of this controversy without having to reach appellants' constitutional challenge." *Id.* That is not the case here. The PTAB cannot provide Plaintiffs the specific relief they seek, which is a holding of facial unconstitutionality of a statute. Further, in *Thetford*, this Court discussed the benefits of having the administrative agency develop an administrative record, which would assist the reviewing court by providing it with the agency's interpretation of the Act. *Id.* Again, that is not the case here. The PTAB's interpretation of

federal law is not in dispute, and it has no authority to declare itself or any of its proceedings unconstitutional. Therefore, *Thetford* is distinguishable and does not permit this Court to sidestep *McCarthy* to align this facial-challenge case with as-applied constitutional challenges that triggered prudential exhaustion.

Likewise, in *Guerra v. Scruggs*, this Court held that an Army private could not avoid prudential exhaustion in bringing as-applied due process and equal protection challenges against his military discharge. 942 F.2d 270, 275-77 (4th Cir. 1991) (noting that discharge proceedings began after the soldier admitted to cocaine use). He could have commenced and completed certain administrative procedures ("two avenues of appeal within the Army structure") that could provide most of what he sought. *Id.* at 272-77. Considerations of efficiency and agency expertise also controlled the outcome. *Id.* at 277-78. But here, the PTAB has no agency expertise (and no authority) to rule itself or one of its proceedings unconstitutional. And again, there is no "remedy" in the PTAB that can give Appellants any of what they seek – a ruling of facial unconstitutionality.

Finally, in *Am. Fed'n of Gov't Emps., AFL-CIO v. Nimmo*, this Court held that military veterans who wished to contest Veterans Administration bills seeking to recapture medical payments must use administrative

remedies before lodging an as-applied due process challenge. 711 F.2d 28, 30-31 (4th Cir. 1983). The Court held that "the veterans can obtain redress through the available administrative procedures" which they had the power to commence and complete, which included various ways ("[t]wo administrative remedies exist") to convince the Veterans Administration to waive the debt. *Id.* As explained already at length, Appellants have no way of using administrative procedures to secure an administrative ruling that the PTAB or any of its procedures are unconstitutional.

## VII.  CONCLUSION AND PROPER REMEDY

Since *inter partes* review clearly violates one or both of constitutional Separation of Powers and the Seventh Amendment, it was wrong for the district court to dismiss for lack of administrative exhaustion. From that conclusion, it also necessarily follows that the district court should have granted Appellants' motion for summary judgment, and held *inter partes* review unconstitutional. In any case, whether or not the violation was "clear," exhaustion simply should not have applied in the first instance, in violation of the Supreme Court's directive in *McCarthy* not to apply exhaustion to facial challenges to a statute's constitutionality. Appellants therefore respectfully request that this Court reverse the district court.

Unconstitutionality triggers the question of proper remedy.

46

*McCormick* itself supplies the answer. In *McCormick*, the particular action by the reissuance examiner that ostensibly canceled a patent's original claims was simply held to be of no effect. *McCormick*, 169 U.S. at 612 (though he "might declare them to be invalid, [] such action would not affect the claims of the original patent, which remained in full force."). Thus, the USPTO activities in *inter partes* review, such as they are, may continue. All that needs correction is to deprive "final written decisions" of the effect of canceling an issued patent. This means striking part of 35 U.S.C. § 318(b). It will then rest with the sound discretion of the various United States District Courts to decide what to do with such adjunct advisory opinions handed down by the Executive. *See Free Ent. Fund*, 130 S. Ct. at 3161 (severing "problematic" portions of unconstitutional statute "while leaving the remainder intact").

/s Robert P. Greenspoon
*Counsel of Record*
Robert P. Greenspoon
William W. Flachsbart
rpg@fg-law.com
wwf@fg-law.com
Flachsbart & Greenspoon, LLC
333 N. Michigan Ave., 27th FL
Chicago, IL 60601
(312) 551-9500
Attorneys for Appellants

April 13, 2015

## **Statement Regarding Oral Argument**

The Appellants request oral argument.

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 15-1205        **Caption:** J. Carl Cooper et al. v. Michelle K. Lee et al.

### CERTIFICATE OF COMPLIANCE WITH RULE 28.1(e) or 32(a)
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1. **Type-Volume Limitation:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 14,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 16,500 words or 1,500 lines. Any Reply or Amicus Brief may not exceed 7,000 words or 650 lines. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include footnotes in the count. Line count is used only with monospaced type.

   This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

   ☑ this brief contains _____10,700_____ [*state number of*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

   ☐ this brief uses a monospaced typeface and contains _____ [*state number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. **Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch).

   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   ☑ this brief has been prepared in a proportionally spaced typeface using
   Microsof Word 2010 _____ [*identify word processing program*] in
   Times New Roman 14 pt. _____ [*identify font size and type style*]; **or**

   ☐ this brief has been prepared in a monospaced typeface using
   _____ [*identify word processing program*] in
   _____ [*identify font size and type style*].

(s) Robert Greenspoon _____

Attorney for appellants _____

Dated: 4/13/2015 _____

# CERTIFICATE OF SERVICE

I certify that on  4/13/2015  the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

DENNIS C. BARGHAAN, JR.
OFFICE OF THE U.S. ATTORNEY
2100 Jamieson Avenue
Alexandria, VA 22314
(703) 229-3891

MARK R. FREEMAN
WILLIAM E. HAVEMANN
U.S. DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue, NW
Room 7515
Washington, DC 20530
(202) 314-8877

/s/ Robert P. Greenspoon
Signature

4/13/2015
Date