15-1205

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

————————————

J. CARL COOPER and eCHARGE LICENSING, LLC,

Appellants,

v.

MICHELLE K. LEE, in her capacity as Director of the
United States Patent & Trademark Office, and
UNITED STATES PATENT & TRADEMARK OFFICE,

Appellees.

————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA, NO. 14-cv-00672

————————————

BRIEF FOR APPELLEES

————————————

NATHAN K. KELLEY
*Solicitor*

SCOTT C. WEIDENFELLER
*Associate Solicitor*
*Office of the Solicitor – Mail Stop 8*
*U.S. Patent and Trademark Office*
*P.O. Box 1450*
*Alexandria, Virginia  22313-1450*

BENJAMIN C. MIZER
*Principal Deputy Assistant Attorney*
*General*

MARK R. FREEMAN
WILLIAM E. HAVEMANN
*(202) 514-8877*
*Attorneys, Appellate Staff*
*Civil Division, Room 7515*
*U.S. Department of Justice*
*950 Pennsylvania Ave., N.W.*
*Washington, D.C.  20530*

## TABLE OF CONTENTS

**Page(s)**

STATEMENT OF JURISDICTION ...................................................................1

STATEMENT OF THE ISSUES........................................................................1

STATEMENT OF THE CASE.........................................................................2

I.      STATUTORY BACKGROUND ........................................................2

II.     PROCEDURAL BACKGROUND ....................................................5

SUMMARY OF ARGUMENT........................................................................7

STANDARD OF REVIEW ...........................................................................11

ARGUMENT ................................................................................................12

I.      THIS COURT SHOULD TRANSFER THE APPEAL TO
        THE FEDERAL CIRCUIT ..............................................................12

II.     THE DISTRICT COURT CORRECTLY CONCLUDED
        THAT CONGRESS INTENDED TO FORECLOSE
        COLLATERAL CHALLENGES TO INTER PARTES
        REVIEW PROCEEDINGS ...............................................................15

III.    CONGRESS ACTED WELL WITHIN ITS CONSTITUTIONAL
        AUTHORITY IN AUTHORIZING THE PTO TO CONDUCT
        INTER PARTES REVIEWS................................................................25

        A.      Inter Partes Review Is Consistent With Article III ...................25

        B.      Inter Partes Review Is Consistent With The Seventh
                Amendment ...............................................................................36

CONCLUSION .............................................................................................38

CERTIFICATE OF COMPLIANCE WITH
FEDERAL RULE OF APPELLATE PROCEDURE 32(A)

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:**                                                                   **Page(s)**

*Am. Fed'n of Gov't Emps, AFL-CIO v. Nimmo,*
   711 F.2d 28 (4th Cir. 1983) ........................................................................20

*Atlas Roofing Co. v. Occupational Safety & Health Review Comm'n,*
   430 U.S. 442 (1977) ..................................................................................37

*B&B Hardware, Inc. v. Hargis Indus., Inc.,*
   135 S. Ct. 1293 (2015) ..........................................................................33, 34

*Blitz v. Napolitano,*
   700 F.3d 733 (4th Cir. 2012) ................................................................16, 22

*Block v. Cmty. Nutrition,*
   Inst., 467 U.S. 340 (1984) ........................................................................9, 15

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,*
   489 U.S. 141 (1989) ..................................................................................28

*Crowell v. Benson,*
   285 U.S. 22 (1932) ....................................................................................26

*Curtis v. Loether,*
   415 U.S. 189 (1974) ..................................................................................36

*Denberg v. U.S. R.R. Retirement Bd.,*
   696 F.2d 1193 (7th Cir. 1983) ....................................................................20

*Elgin v. Dep't of Treasury,*
   132 S. Ct. 2126 (2012) ....................................................................9, 16, 18, 22

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.,*
   561 U.S. 477 (2010) ..................................................................................23

*Goldstein v. Moatz,*
   364 F.3d 205 (4th Cir. 2004) ................................................................8, 12

*Granfinanciera, S.A. v. Nordberg,*
492 U.S. 33 (1989) ...................................................... 11, 26, 27, 29, 37

*Gunn v. Minton,*
133 S. Ct. 1059 (2013) .............................................................. 12

*Helfgott & Karas, P.C. v. Dickinson,*
209 F.3d 1328 (Fed. Cir. 2000) ............................................... 14

*In re Cuozzo Speed Techs., LLC,*
778 F.3d 1271 (Fed. Cir. 2015) ............................................... 3, 4

*In re Tech. Licensing Corp.,*
423 F.3d 1286 (Fed. Cir. 2005) (per curiam) ......................... 38

*Iron Silver Mining Co. v. Campbell,*
135 U.S. 286 (1890) ................................................................. 32

*Jean v. Nelson,*
472 U.S. 846 (1985) ................................................................. 20

*Jennings v. Univ. of N.C.,*
482 F.3d 686 (4th Cir. 2007) .................................................. 11

*Joy Technologies, Inc. v. Manbeck,*
959 F.2d 226 (Fed. Cir. 1992) .................... 2, 3, 10, 15, 25, 31, 37

*Kappos v. Hyatt,*
132 S. Ct. 1690 (2012) ......................................................... 27, 28

*Madstad Eng'g, Inc. v. U.S. Patent and Trademark Office,*
756 F.3d 1366 (Fed. Cir. 2014) ............................................. 7, 14

*McCormick Harvesting Mach. Co. v. C. Aultman & Co.,*
169 U.S. 606 (1991) .......................................................... 13, 30, 31

*Moore v. Robbins,*
96 U.S. 530 (1877) ................................................................. 32

*Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Corp.,*
65 F.3d 1113 (4th Cir. 1995) .................................................. 12

iv

*Murray's Lessee v. Hoboken Land & Improvement Co.*,
    59 U.S. 272 (1855) ......................................................................26

*Nationsbank Corp. v. Herman*,
    174 F.3d 424 (4th Cir. 1999) .....................................................20

*Nat'l Taxpayers Union v. U.S. Soc. Sec. Admin.*,
    376 F.3d 239 (4th Cir. 2004) .........................................12, 20, 23

*Patlex Corp. v. Mossinghoff*,
    771 F.2d 480 (Fed. Cir. 1985) ...................................................35

*Patlex Corp. v. Mossinghoff*,
    758 F.2d 594 (Fed. Cir.), *modified on other grounds on reh'g*,
    771 F.2d 480 (Fed. Cir. 1985) ...........................................*passim*

*Pernell v. Southall Realty*,
    416 U.S. 363 (1974) ...................................................................37

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*,
    324 U.S. 806 (1945) .............................................................28, 29

*Pregis Corp. v. Kappos*,
    700 F.3d 1348 (Fed. Cir. 2012) .............................................16, 17

*Pub. Utils. Comm'n of Cal. v. United States*,
    355 U.S. 534 (1958) ...................................................................20

*Sasser v. Adm'r, U.S. E.P.A.*,
    990 F.2d 127 (4th Cir. 1993) .....................................................37

*Sears, Roebuck & Co. v. Stiffel Co.*,
    376 U.S. 225 (1964) .......................................................28, 32, 34

*Semper v. Gomez*,
    747 F.3d 229 (3d Cir. 2014) .....................................................20

*Shalala v. Ill. Council on Long Term Care, Inc.*,
    529 U.S. 1 .................................................................................21

*South Carolina Citizens for Life, Inc. v. Krawcheck,*
    301 F. App'x 218 (4th Cir. 2008) ...............................................................23

*St. Jude Med., Cardiology Div., Inc. v. Volcano Corp.,*
    749 F.3d 1373 (Fed. Cir. 2014) ........................................................... 3, 4

*Stern v. Marshall,*
    131 S. Ct. 2594 (2011) ........................................................ 26, 27, 29, 32

*Teva Pharm. USA, Inc. v. Sandoz, Inc.,*
    135 S. Ct. 831 (2015) ...............................................................28, 33, 34

*Thomas v. Union Carbide Agric. Prods. Co.,*
    473 U.S. 568 (1985) ...................................................................................36

*Thunder Basin Coal v. Reich,*
    510 U.S. 200 (1994) .................................................................19, 23, 24

*Tull v. United States,*
    481 U.S. 412 (1987) ...................................................................................37

*United States v. American Bell Tel. Co.,*
    128 U.S. 315 (1888) ...................................................................................32

*United States v. Ruzicka,*
    329 U.S. 287 (1946) ...................................................................................20

*United States v. Stone,*
    69 U.S. 525 (1864) .....................................................................................32

*Virginia v. United States,*
    74 F.3d 517 (4th Cir. 1996) ........................................................ 9, 17, 19, 23

*Woodford v. Ngo,*
    548 U.S. 81 (2006) .....................................................................................17

**Statutes:**

Leahy-Smith America Invents Act,
    Pub. L. No. 112-29, § 6, 125 Stat. 284 (2011) ...................................................3

Pub. L. No. 96-517, 94 Stat. 3015 (1980) ..................................................2

5 U.S.C. § 704............................................................................................17

28 U.S.C. § 1291 .........................................................................................1

28 U.S.C. § 1295(a)(1) ................................................................1, 8, 12, 14

28 U.S.C. § 1331 .........................................................................................1

28 U.S.C. § 1631 .......................................................................................14

35 U.S.C. ch. 30 ..........................................................................................2

35 U.S.C. § 131 .........................................................................................28

35 U.S.C. § 141(c) ........................................................................5, 7, 9, 16

35 U.S.C. § 142 ...........................................................................................7

35 U.S.C. § 303 .........................................................................................28

35 U.S.C. § 303(a) .......................................................................................2

35 U.S.C. § 304 ...........................................................................................2

35 U.S.C. § 311 (2000) ..............................................................................28

35 U.S.C. §§ 311-318 (2000) ......................................................................3

35 U.S.C. § 311 ....................................................................................3, 28

35 U.S.C. § 312 (2000) ..............................................................................28

35 U.S.C. § 312(a)(3) ..................................................................................4

35 U.S.C. § 314(a) .......................................................................................4

35 U.S.C. § 314(b) ..............................................................................4

35 U.S.C. § 314(d) .....................................................................4, 9, 16

35 U.S.C. § 316(a)(5) ..........................................................................4

35 U.S.C. § 316(a)(8) ..........................................................................4

35 U.S.C. § 316(a)(10) ........................................................................4

35 U.S.C. § 316(a)(11) ........................................................................4

35 U.S.C. § 316(c) ...............................................................................4

35 U.S.C. § 318(a) ...............................................................................4

35 U.S.C. § 319 .................................................................................5, 7

42 U.S.C. § 7607(b)(1) ......................................................................19

**Constitution:**

U.S. Const. amend. VII ...................................................................36

U.S. Const. art. I, § 8, cl. 8 ........................................................10, 27

U.S. Const. art. III, § 1 ....................................................................25

**Rule:**

Fed. R. App. P. 4(a)(1)(B) ................................................................1

**Regulation:**

37 C.F.R. § 90.3(a) .............................................................................7

**Legislative Material:**

H.R. Rep. No. 112-98, pt. 1 (2011) .................................................................... 3, 29

**Other Authorities:**

13 *Writings of Thomas Jefferson* (Memorial ed. 1904) ............................................28

## STATEMENT OF JURISDICTION

This is a civil action under the Administrative Procedure Act (APA). Appellants asserted jurisdiction in the district court under 28 U.S.C. § 1331. The district court granted summary judgment against appellants on February 18, 2015, and entered final judgment in favor of appellees. JA 338. Appellants filed a timely notice of appeal the next day, *see* Fed. R. App. P. 4(a)(1)(B), asserting jurisdiction in this Court under 28 U.S.C. § 1291.

As we explained below, the district court lacked jurisdiction over the complaint because appellants were required to proceed through the comprehensive inter partes review scheme established by Congress, which culminates in judicial review by the Federal Circuit. Furthermore, this Court lacks jurisdiction over this appeal because appellants' constitutional challenge raises a "substantial question" of patent law subject to the exclusive jurisdiction of the Federal Circuit. *See* 28 U.S.C. § 1295(a)(1).

## STATEMENT OF THE ISSUES

1. Whether appellants' constitutional challenge to the patent laws raises a "substantial question" of patent law subject to the exclusive jurisdiction of the Federal Circuit.

2. Whether Congress intended to preclude parties to inter partes review proceedings in the Patent and Trademark Office (PTO) from collaterally challenging those proceedings in federal district court under the APA.

1

3.  Whether inter partes review is consistent with Article III and the Seventh Amendment.

## STATEMENT OF THE CASE

### I.    STATUTORY BACKGROUND.

For thirty five years, Congress has provided administrative mechanisms for third parties to ask the PTO to reconsider the patentability of the claims in an issued patent.  In 1980, Congress enacted the first statute authorizing ex parte reexamination. *See* Pub. L. No. 96-517, 94 Stat. 3015 (1980) (codified at 35 U.S.C. ch. 30).  This statute specified that the PTO could grant a request for ex parte reexamination if the request raised "a substantial new question of patentability."  35 U.S.C. §§ 303(a), 304. Upon granting a petition for ex parte reexamination, the PTO would reconsider the patentability of the previously granted claims.

The Federal Circuit—the Court entrusted by Congress with exclusive appellate jurisdiction over cases arising under the patent laws—has twice affirmed the constitutionality of Congress's ex parte reexamination scheme.  In *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 604-05 (Fed. Cir.), *modified on other grounds on reh'g*, 771 F.2d 480 (Fed. Cir. 1985), the court held that nothing in Article III or the Seventh Amendment prohibits Congress from authorizing the PTO to correct its own errors by reconsidering—and, where necessary, cancelling—claims in previously issued patents.  The Court reaffirmed that holding in *Joy Technologies, Inc. v. Manbeck*, 959 F.2d

2

226, 228 (Fed. Cir. 1992), reiterating that the reexamination of patents "may constitutionally be adjudicated by legislative courts and administrative agencies." *Id.*

In the wake of *Patlex* and *Joy Technologies*, Congress has expanded the PTO's authority to review the patentability of claims in issued patents. In 1999, Congress created the inter partes reexamination scheme. 35 U.S.C. §§ 311-318 (2000). Then, in 2011, Congress passed the America Invents Act (AIA), which amended the Patent Act by overhauling the PTO's processes for reconsidering the patentability of issued patents. *See* Leahy-Smith America Invents Act (AIA), Pub. L. No. 112-29, § 6, 125 Stat. 284, 299-304 (2011).

As relevant here, the AIA replaced inter partes reexamination with inter partes review, an adversarial proceeding before the new Patent Trial and Appeal Board (PTAB or Board). 35 U.S.C. § 311; *see generally In re Cuozzo Speed Techs., LLC*, 778 F.3d 1271 (Fed. Cir. 2015). Congress explained that the object of the AIA's new procedures was to "establish a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs." H.R. Rep. No. 112-98, pt. 1, at 40 (2011).

An inter partes review proceeds in two stages. First, at the institution phase, "a person other than the owner of the patent may petition the PTO for [inter partes] review." *St. Jude Med., Cardiology Div., Inc. v. Volcano Corp.*, 749 F.3d 1373, 1374 (Fed. Cir. 2014) (citing 35 U.S.C. § 311). A petition for inter partes review must identify "each claim challenged, the grounds on which the challenge to each claim is based,

3

and the evidence that supports the grounds for the challenge to each claim." 35 U.S.C. § 312(a)(3). The patent owner may file a response to the petition, and the PTO Director must decide within three months of receiving that response whether to institute an inter partes review. *Id.* § 314(b). Congress instructed that the PTO may not institute an inter partes review unless "there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition." *Id.* § 314(a). Congress further directed that the PTO's decision whether to institute an inter partes review shall be "final and nonappealable." *Id.* § 314(d); *see also In re Cuozzo*, 778 F.3d at 1276 (holding that a party may not appeal the PTAB's decision to institute inter partes review).

After instituting inter partes review, the PTO conducts the review on the merits. As the Federal Circuit has explained, the "'conduct' of an *inter partes* review follows its 'institution,' and the Patent Trial and Appeal Board is the one to 'conduct each inter partes review instituted.'" *St. Jude*, 749 F.3d at 1374 (quoting 35 U.S.C. § 316(c)). The parties are entitled to take limited discovery, *id.* § 316(a)(5), to file affidavits and declarations, *id.* § 316(a)(8), to have an oral hearing, *id.* § 316(a)(10), and to file written memoranda, *id.* §§ 316(a)(8). "Unless the review is dismissed, the Board 'shall issue a final written decision,'" addressing the patentability of the claims at issue in the proceeding. *St. Jude*, 749 F.3d at 1374 (quoting 35 U.S.C. § 318(a)). The Board must issue its final patentability decision within one year of the Director's decision to institute inter partes review unless certain exceptions apply. *Id.* § 316(a)(11).

4

The Board's final patentability decision is then subject to direct appeal to the Federal Circuit. *See* 35 U.S.C. § 319. Congress made clear, moreover, that the Federal Circuit is the exclusive venue for judicial review of the Board's decisions in inter partes review proceedings: a party to an inter partes review dissatisfied with the Board's final written decision "may appeal the Board's decision *only* to the United States Court of Appeals for the Federal Circuit." 35 U.S.C. § 141(c) (emphasis added).

## II.   PROCEDURAL BACKGROUND.

Plaintiffs J. Carl Cooper and eCharge Licensing, LLC (together, Cooper) own the three patents at issue in this proceeding, which claim processes related to patterns of information that that can be carried on various media, including credit cards. In September 2013, eCharge filed a civil action against Square, Inc., in the U.S. District Court for the Northern District of Illinois, alleging that Square had infringed the three patents. *See* JA 323. A month later, Square filed petitions with the PTO seeking to institute inter partes review proceedings for each of the three patents. *Id.*

After reviewing Square's petitions for inter partes review, the PTO concluded that there was a "reasonable likelihood" that various claims in the challenged patents were unpatentable as anticipated by the prior art. JA 327-28. The PTO therefore instituted three inter partes reviews. JA 19, 46, 70. eCharge consented to a stay of the Illinois action pending the outcome of the administrative process. *See* JA 323.

Rather than await resolution of the inter partes reviews and appeal to the Federal Circuit from any adverse final decision, however, Cooper filed this civil action against the PTO in the U.S. District Court for the Eastern District of Virginia. JA 7. Cooper asserted that inter partes review violates Article III of the Constitution and the Seventh Amendment. JA 8-9.

The district court granted summary judgment for the PTO. JA 338. The court held that Cooper failed to adhere to the designated administrative review scheme when he brought an APA suit in federal court prior to the resolution of the inter partes reviews. JA 324-25. The court explained that "the language of the [AIA], its statutory scheme and procedures for appellate review, and the designation of the Federal Circuit as the tribunal for judicial review, together evince congressional intent that the administrative process shall conclude before any judicial review of the PTAB's decisions." JA 331. The court rejected Cooper's argument that he need not exhaust the administrative process before raising a constitutional challenge, noting that "the Fourth Circuit has consistently held that exhaustion is required when an administrative litigant challenges the constitutionality of a statute that an agency is charged with implementing." *Id.*

The court further held that there was no reason to permit Cooper to pursue a collateral action under the APA. First, inter partes review was not "patently unconstitutional" given that "the Federal Circuit has twice upheld the constitutionality of PTO administrative proceedings concerning the reexamination of issued patents

6

that are similar to *inter partes* review," and that Cooper's constitutional claims would therefore probably "ultimately fail." JA 333-35. Second, Cooper would suffer no "irreparable injury" by challenging inter partes review through the administrative scheme established by Congress given that he could present his constitutional claims to the Federal Circuit on appeal from the PTAB's final written decision. JA 335.

Rather than appealing to the Federal Circuit, which has specifically held that its exclusive appellate jurisdiction extends to constitutional challenges to the patent laws, *see Madstad Eng'g, Inc. v. U.S. Patent and Trademark Office*, 756 F.3d 1366, 1370 (Fed. Cir. 2014), Cooper appealed to this Court. The PTO moved to transfer the appeal to the Federal Circuit. This Court deferred resolution of the transfer motion pending completion of briefing. *See* ECF #39.

In May 2015, the PTO issued final written decisions holding unpatentable the claims at issue in the challenged patents. *See* IPR2014-00156 (May 14, 2015); IPR2014-00157 (May 14, 2015); IPR2014-00158 (May 8, 2015). Cooper has until mid-July to appeal those final written decisions to the Federal Circuit. *See* 35 U.S.C. §§ 142 & 319; 37 C.F.R. § 90.3(a) (providing that an appellant from an inter partes review proceeding has sixty three days to file a notice of appeal in the Federal Circuit).

## SUMMARY OF ARGUMENT

Congress authorized the PTO to conduct inter partes reviews of issued patents and provided for immediate judicial review at the behest of any aggrieved party. Congress specified, however, that such review shall proceed "only" in the Federal

Circuit. 35 U.S.C. § 141(c). The district court properly rejected Cooper's effort to bypass that scheme through this collateral challenge under the APA.

**I.** As an initial matter, this appeal should be transferred to the Federal Circuit, which Congress has entrusted with "exclusive jurisdiction" over appeals in civil actions "arising under" the patent laws. 28 U.S.C. § 1295(a)(1). This Court has held that a civil action "arises under" a patent law if it raises a "substantial question" of patent law. *Goldstein v. Moatz*, 364 F.3d 205, 210 n.8 (4th Cir. 2004). Cooper's constitutional claims plainly raise such a "substantial question" of patent law. Cooper challenges the constitutionality of an administrative scheme, created by the Patent Act, allowing the PTO to reconsider the validity of previously issued patents. Among other things, Cooper invites this Court to pass on the nature of the rights conferred by a patent and to decide whether a declaratory judgment for patent invalidity would have been subject to a jury trial in 1791. Congress intended the Federal Circuit to decide such questions. Indeed, the Federal Circuit has specifically held that its exclusive jurisdiction extends to appeals, like this one, involving challenges under the APA to the constitutionality of the patent laws. There is no reason for the Court to create a circuit split by concluding otherwise.

**II.** If this Court does not transfer the appeal, it should affirm the district court's judgment that Congress has precluded parties from collaterally attacking inter partes review proceedings through APA actions in federal district court. Judicial review under the APA is not available where Congress's intent to preclude such

8

review is "fairly discernible" in the statutory scheme. *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 345, 351 (1984). Here, the text, structure, and purpose of the AIA make apparent Congress's intent to prevent parties from circumventing the inter partes review scheme by bringing constitutional challenges directly in federal district court. Rather, Congress intended to permit aggrieved parties to appeal *only* from the Board's final written decision, *see* 35 U.S.C. § 314(d) (explaining that the PTAB's decision whether to institute an inter partes review shall be "final and nonappealable"), and *only* to the Federal Circuit, *see id.* § 141(c) (explaining that a party dissatisfied with the Board's final decision "may appeal the Board's decision only to" the Federal Circuit). Moreover, Congress's purpose in creating inter partes review—to increase efficiency and reduce litigation costs—would be wholly undermined by permitting collateral suits of this type.

Nothing about this analysis changes merely because Cooper has brought a facial constitutional challenge to inter partes review. The Supreme Court has repeatedly recognized that Congress may require aggrieved parties to "proceed exclusively through the statutory review scheme, even in cases in which the[y] raise constitutional challenges to federal statutes." *Elgin v. Dep't of Treasury*, 132 S. Ct. 2126, 2132-33 (2012). This Court likewise has required parties to proceed through a comprehensive administrative scheme even where the parties raise facial constitutional challenges. *See, e.g., Virginia v. United States*, 74 F.3d 517, 523 (4th Cir. 1996) ("There is simply no impediment to the adjudication of constitutional issues

9

through petitions for direct review of final agency action in the circuit courts.").  In fact, prematurely resolving Cooper's constitutional challenge would run afoul of principles of constitutional avoidance, since proceeding through the administrative scheme could render consideration of Cooper's constitutional claims unnecessary. The Federal Circuit can ably resolve any remaining constitutional questions on appeal from the Board's final written decisions.

**III.** This Court need not and should not reach the merits of Cooper's constitutional claims, but if it does reach those claims, they are entirely without merit. The Federal Circuit has twice held that allowing the PTO to reevaluate the patentability of claims in issued patents is consistent with Article III. *Joy Techs., Inc. v. Manbeck*, 959 F.2d 226, 228 (Fed. Cir. 1992); *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 604 (Fed. Cir. 1985).  As the Federal Circuit explained, Article III does not forbid Congress from authorizing the PTO to correct its own mistakes.  Patents are quintessential "public rights" whose allowance and cancellation Congress may permissibly delegate to a non-Article III tribunal.  Indeed, patents are both created by public law and are themselves an expression of the public interest, and they are issued by a specialized federal agency that Congress created in the exercise of its express constitutional power to promote the progress of the useful arts.  *See* U.S. Const. art. I, § 8, cl. 8.  Because Congress may authorize the PTO to issue patents in the first instance, Congress may equally authorize the PTO to reconsider its patentability decisions and to correct its mistakes.

10

The various 19th century Supreme Court patent cases that Cooper cites do not call into question the constitutionality of inter partes review. Those cases merely hold that, as of the 19th century, the patent laws afforded the Executive Branch no statutory authority to reconsider the validity of previously issued patents. Beginning in 1980, however, Congress has afforded the PTO with precisely the statutory authority previously found lacking. None of the cases cited by Cooper suggests that the Constitution prevents Congress from doing so.

Because inter partes review involves public rights that Congress may delegate to an administrative agency for adjudication, moreover, the Seventh Amendment poses no separate constitutional obstacle. The Supreme Court has explained that "if Congress may assign the adjudication of a statutory cause of action to a non-Article III tribunal, then the Seventh Amendment poses no independent bar to the adjudication of that action by a nonjury factfinder." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 53-54 (1989). Because Congress may authorize the PTO to conduct inter partes reviews without violating Article III, therefore, nothing in the Seventh Amendment's jury-trial right precludes it from doing so.

## STANDARD OF REVIEW

This court reviews a district court's order granting summary judgment de novo, applying the same standard as the district court. *Jennings v. Univ. of N.C.*, 482 F.3d 686, 694 (4th Cir. 2007) (en banc). This Court also reviews de novo a district court's conclusion that Congress has precluded parties from bringing suit under the APA by

providing an alternative scheme for review of agency action. *Nat'l Taxpayers Union v. U.S. Soc. Sec. Admin.*, 376 F.3d 239, 241 (4th Cir. 2004).

This Court reviews constitutional challenges to federal statutes de novo. *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Corp.*, 65 F.3d 1113, 1123 (4th Cir. 1995).

## ARGUMENT

### I.    THIS COURT SHOULD TRANSFER THE APPEAL TO THE FEDERAL CIRCUIT.

As an initial matter, this appeal does not belong in this Court.[1]  Congress has assigned the Federal Circuit "exclusive jurisdiction" over appeals from final district court decisions "in any civil action arising under . . . any Act of Congress relating to patents." 28 U.S.C. § 1295(a)(1).  An action "arises under" the patent laws if it necessarily raises a disputed and substantial question of patent law. *See Gunn v. Minton*, 133 S. Ct. 1059, 1065 (2013).  This Court has held that a claim that is "created by federal patent law" or "require[s] [the Court] to resolve a substantial question of patent law" must be transferred to the Federal Circuit. *Goldstein v. Moatz*, 364 F.3d 205, 210 n.8 (4th Cir. 2004).

Cooper's constitutional challenge to the PTO's patent review process plainly raises "substantial questions" of patent law subject to the exclusive jurisdiction of the

---

[1] Before briefing in this Court commenced, the government moved to transfer this appeal to the Federal Circuit.  The Court deferred ruling on the transfer motion pending the completion of briefing. *See* ECF #39.

Federal Circuit. Cooper's complaint raises numerous questions of patent law within the expertise of the Federal Circuit. Specifically, Cooper's Article III challenge implicates the question whether the rights conferred on patent owners under the Patent Act constitute "public rights" that Congress may permissibly delegate to non-Article III courts. And Cooper's Seventh Amendment challenge implicates the question whether inter partes review involves the type of patent rights that would have been subject to a jury trial in 1791.

Cooper's opening brief itself illustrates that this case raises substantial questions of patent law. Cooper's arguments rest on an erroneous interpretation of the procedures attendant to inter partes review—a process established by Congress *in the Patent Act* for reevaluating the validity of issued *patents*. Br. 25-32. Cooper also offers a lengthy colloquy on 19th century Supreme Court patent decisions and invites this Court to resolve such questions as the "analogousness of patents for land" to patents for inventions, Br. 18, whether the Executive Branch may "cancel a patent as invalid upon the patentee's application for reissue," *id.*, and in what circumstances the authority to set aside a patent "is vested in the courts of the United States, and not in the department which issued the patent." Br. 19 (quoting *McCormick Harvesting Mach. Co. v. C. Aultman & Co.*, 169 U.S. 606, 609 (1991)). Cooper further invites this Court to evaluate whether an inter partes review "is virtually identical to a declaratory judgment action for an invalidity finding filed by the petitioner." Br. 29. Congress intended the Federal Circuit to resolve such questions.

13

Indeed, the Federal Circuit has squarely held that it possesses exclusive appellate jurisdiction over claims of this type.  In *Madstad Eng'g, Inc. v. U.S. Patent and Trademark Office*, 756 F.3d 1366, 1370 (Fed. Cir. 2014), the Federal Circuit asserted jurisdiction over a plaintiff's constitutional challenge to a different provision of the AIA.  Although the *Madstad* challengers, like plaintiffs here, framed their complaint as arising under the Constitution rather than a patent law, the Federal Circuit explained that "a claim attacking the constitutionality of an Act of Congress relating to patents is one arising under that Act of Congress" within the meaning of 28 U.S.C. § 1295(a)(1). *Id.; see also Helfgott & Karas, P.C. v. Dickinson*, 209 F.3d 1328, 1334 (Fed. Cir. 2000) (asserting jurisdiction over an APA challenge to PTO's refusal to permit the correction of a patent application because the question whether the Commissioner "violated the APA in applying the [Patent Cooperation Treaty] rules and regulations" raised a substantial question under the patent laws).

There is no reason for this Court to draw a different jurisdictional line.  To do so would only engender confusion among litigants about the appropriate venue for appeals in APA actions involving the patent laws; render uncertain which circuit's substantive law should govern patent-related cases brought in the Eastern District of Virginia; and encourage appealing parties—like Cooper here—to select their preferred appellate court strategically to avoid unfavorable precedent.

Because this Court lacks jurisdiction, this appeal should be transferred to the Federal Circuit.  *See* 28 U.S.C. § 1631 (when a court with whom a civil action has been

14

filed "finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed").

## II.    THE DISTRICT COURT CORRECTLY CONCLUDED THAT CONGRESS INTENDED TO FORECLOSE COLLATERAL CHALLENGES TO INTER PARTES REVIEW PROCEEDINGS.

**A.** If this Court declines to transfer this appeal, the Court should affirm that the district court lacked jurisdiction over Cooper's complaint.  At the time Cooper filed suit, he owned three patents subject to challenge in ongoing inter partes review proceedings.  Rather than await the Board's final decision in those proceedings and appeal to the Federal Circuit, as contemplated by the AIA, Cooper filed this collateral APA action in district court.  Cooper did so in a transparent attempt to avoid Federal Circuit precedent that forecloses his constitutional claims on the merits.  *See Joy Techs., Inc. v. Manbeck*, 959 F.2d 226, 228 (Fed. Cir. 1992); *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 604 (Fed. Cir. 1985). As the district court correctly concluded, Congress intended to preclude this type of collateral challenge to an inter partes review proceeding.  JA 331.  This Court therefore lacks jurisdiction.

Congress may—and often does—displace the APA's default cause of action by providing a detailed scheme for administrative and judicial review of agency action. As the Supreme Court has explained, judicial review under the APA will not lie where "congressional intent to preclude judicial review is fairly discernible in the statutory scheme." *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 351 (1984) (quotation marks

omitted).  Courts look to the "text, structure, and purpose" of the statutory scheme to determine whether Congress's intent to preclude jurisdiction under the APA is "fairly discernible." *Elgin v. Dep't of Treasury*, 132 S. Ct. 2126, 2133 (2012).

Congress could hardly have been clearer that it intended to prohibit parties embroiled in ongoing inter partes review proceedings from challenging those proceedings in a collateral APA action in federal district court.  Rather, Congress intended to permit aggrieved parties to appeal *only* from the Board's final written decision and *only* to the Federal Circuit.  The plain text of the AIA provides as much. It explains that the Board's initial decision whether to institute an inter partes review shall be "final and nonappealable," 35 U.S.C. § 314(d), and that a party dissatisfied with the Board's final decision "may appeal the Board's decision *only* to the United States Court of Appeals for the Federal Circuit," *id.* § 141(c) (emphasis added).  This Court and others have easily found APA actions precluded in similar contexts.  *See, e.g., Blitz v. Napolitano*, 700 F.3d 733, 740 (4th Cir. 2012) ("we have no reason to look beyond the plain text of the statute, in which Congress clearly expressed its intention that any legal challenge to a [TSA] order, including a [constitutional] proceeding like the one at bar, be brought in the first instance in a court of appeals"); *Pregis Corp. v. Kappos*, 700 F.3d 1348, 1358 n.1 (Fed. Cir. 2012) (holding that the Patent Act's "intricate scheme for administrative and judicial review of PTO patentability determinations . . . evinces a clear Congressional intent to preclude actions under the

16

APA," and that the advent of inter partes review "reinforces the conclusion that Congress intended to preclude other avenues of judicial review").

The purpose of the AIA further underscores Congress's intent to preclude collateral review of an inter partes review proceeding. One of the AIA's primary goals was to "establish a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs." H.R. Rep. No. 112-98, pt. 1, at 40. Congress cannot have intended to allow plaintiffs to circumvent the AIA's streamlined process for Federal Circuit review by bringing suit in district court before the issuance of a final written decision. *See Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (noting that the exhaustion doctrine "promotes efficiency").

Thus, the district court correctly concluded that "the language of the statute, its statutory scheme and procedures for appellate review, and the designation of the Federal Circuit as the tribunal for judicial review, together evince congressional intent that the administrative process shall conclude before any judicial review of the PTAB's decisions." JA 331.[2]

---

[2] For essentially the same reasons, the AIA's judicial review scheme provides an alternate "adequate remedy in a court," thus barring Cooper's APA challenge. *See* 5 U.S.C. § 704 ("final agency action for which there is *no other adequate remedy in a court* [is] subject to judicial review") (emphasis added); *see also Pregis Corp.*, 700 F.3d at 1357-61 (pointing to the Patent Act provisions permitting third-party challenges to patents as evidence of both preclusion and an alternative adequate remedy). Whether the AIA's carefully channeled judicial review provisions are understood as precluding an APA end-run around those provisions, or instead as providing an adequate remedy to parties dissatisfied with the PTO's ultimate final written decision, the district court correctly recognized that Cooper's APA challenge cannot proceed.

17

**B.** The principle that Congress may preclude collateral APA actions by channeling judicial review to a specific court applies equally where, as here, the plaintiff raises a constitutional challenge. The Supreme Court and this Court have repeatedly recognized that Congress may require aggrieved parties to "proceed exclusively through the statutory review scheme, even in cases in which the[y] raise constitutional challenges to federal statutes," as long as the review scheme provides for "meaningful review" of those claims. *Elgin*, 132 S. Ct. at 2132-33.

In *Elgin*, for example, the Supreme Court rejected an attempt by the plaintiffs—federal employees who were terminated for failing to register for the selective service—to challenge the constitutionality of their termination without proceeding through the administrative process established in the Civil Service Reform Act (CSRA). 132 S. Ct. at 2130-31. Like the AIA, the CSRA provided for an administrative review process followed by direct appeal to the Federal Circuit. *Id.* The Supreme Court held that the CSRA's "comprehensive system for reviewing personnel action taken against federal employees" provided the plaintiffs' exclusive means of review. *Id.* at 2130. And the Court expressly rejected the plaintiffs' argument that the CSRA's "exclusive review scheme is inapplicable simply because a covered employee challenges a covered action on the ground that the statute authorizing that action is unconstitutional." *Id.* at 2134. The Court explained that "the CSRA does not foreclose all judicial review of petitioners' constitutional claims,

but merely directs that judicial review shall occur in the Federal Circuit," which "is fully capable of providing meaningful review." *Id.* at 2132.

This Court's decision in *Virginia v. United States*, 74 F.3d 517 (4th Cir. 1996), is also squarely on point. In that case, Virginia filed suit in district court asserting a facial challenge to the constitutionality of certain provisions of the Clean Air Act. *Id.* at 521-22. The Clean Air Act, however, provided that a petition for review of any "final action of the [EPA] Administrator under this chapter . . . may be filed *only* in the United States Court of Appeals for the appropriate circuit." *Id.* at 522 (quoting 42 U.S.C. § 7607(b)(1)) (alterations and emphasis in original). Like plaintiffs here, Virginia attempted to evade this statutory review scheme by claiming that its challenge did "not seek a review of any final [agency] action" but rather was "directed to the statute itself." *Id.* This Court rejected that argument and held that the district court lacked jurisdiction over the action. *Id.* at 523. The Court explained that Virginia could not "circumvent direct review in the circuit court" by "framing its complaint as a constitutional challenge to the [Act]." *Id.* at 522. And the Court added that there "is simply no impediment to the adjudication of constitutional issues through petitions for direct review of final agency action in the circuit courts." *Id.* at 523. Numerous other decisions of the Supreme Court, this Court, and other courts of appeals have reached the same conclusion.[3]

---

[3] *See Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 208, 215 (1994) (holding that plaintiffs were required to pursue their claims through the "comprehensive review

Principles of constitutional avoidance provide further reason to adhere to the

administrative review scheme established by Congress. Courts "ought not to pass on

questions of constitutionality unless such adjudication is unavoidable." *Jean v. Nelson*,

472 U.S. 846, 854 (1985) (alternation omitted). Thus, as the Supreme Court has

recognized, if "an administrative proceeding might leave no remnant of the

constitutional question, the administrative remedy plainly should be pursued." *Pub.*

*Utils. Comm'n of Cal. v. United States*, 355 U.S. 534, 539-40 (1958); *see also Am. Fed'n of*

*Gov't Emps, AFL-CIO v. Nimmo*, 711 F.2d 28, 31 (4th Cir. 1983) ("exhaustion is

particularly appropriate when the administrative remedy may eliminate the necessity to

decide constitutional questions"). In this case, had the Board concluded during the

inter partes review proceedings that the challenged claims were in fact patentable,

---

process" established by federal statute and noting that plaintiffs' constitutional claims
"can be meaningfully addressed in the Court of Appeals"); *United States v. Ruzicka*, 329
U.S. 287, 294 (1946) (party bringing constitutional challenge to an order under
Agricultural Marketing Agreement act must proceed through administrative scheme);
*Nat'l Taxpayers Union v. Soc. Sec. Admin.*, 376 F.3d 239, 243 (4th Cir. 2004) (rejecting
constitutional challenge to Social Security Act because statutory scheme "establishes a
detailed structure for reviewing violations" and "the plaintiff's constitutional claim
could be meaningfully addressed by the court of appeals in due course"); *Nationsbank
Corp. v. Herman*, 174 F.3d 424, 429 (4th Cir. 1999) (noting the Court's "consistent and
unambiguous line of cases rejecting the contention that constitutional claims should
be exempt from exhaustion requirements"); *Semper v. Gomez*, 747 F.3d 229, 242 (3d
Cir. 2014) ("the CSRA precludes a federal employee from litigating constitutional
claims for equitable and declaratory relief in a § 1331 action where the employee could
pursue meaningful relief under a remedial plan that provides for meaningful review of
his or her claims by judicial officers"); *Denberg v. U.S. R.R. Retirement Bd.*, 696 F.2d
1193, 1195 (7th Cir. 1983) (where Congress provided for a right to appeal a benefits
determination under Railroad Retirement Act directly to court of appeals, plaintiff
could not bring an action challenging the constitutionality of the Act in district court).

then Cooper would have had no need to press his constitutional challenge. On appeal from the Board's final written decision, the Federal Circuit may yet conclude that the Board erred in finding Cooper's patent claims unpatentable, in which case review of Cooper's constitutional claims would also be unnecessary.

If consideration of Cooper's constitutional claims ultimately becomes appropriate, the Federal Circuit is fully capable of providing that review on direct appeal from the Board's final written decisions. *See Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 23-24 ("a court reviewing an agency determination . . . has adequate authority to resolve any statutory or constitutional contention that the agency does not, or cannot, decide"). Indeed, on appeal from a final written decision by the Board, a different patent owner has asserted a constitutional challenge in the Federal Circuit that is virtually identical to the challenge Cooper presents here. *See MCM Portfolio LLC v. Hewlett-Packard Co.*, No. 15-1091, (Fed. Cir.) (oral argument not yet scheduled). Cooper has participated in that case as *amicus curiae*, never suggesting that the Federal Circuit cannot provide meaningful review of the constitutional questions presented.

**C.** Cooper's various arguments to the contrary confuse or misstate the applicable law.

*First*: Cooper cites the wrong standard in asserting that an administrative scheme renders a collateral APA action unavailable only if there is either (1) "a clear Congressional directive that the exact issue being litigated must first be addressed

through the administrative agency" or (2) if this Court determines "that exhaustion would serve the twin purposes of protecting administrative agency authority and promoting judicial efficiency." Br. 35 (quotation marks and alterations omitted). The cases that Cooper cites to support this standard relate to whether principles of exhaustion foreclose a suit where a plaintiff has prematurely sought the appropriate form of review. In this case, by contrast, Cooper has entirely bypassed the applicable statutory review scheme by filing an APA suit in an inappropriate court. In the circumstance such as this, "'where Congress simply channels judicial review of a constitutional claim to a particular court,'" this Court has made clear that "the appropriate inquiry is 'whether Congress' intent to preclude district court jurisdiction is fairly discernible in the statutory scheme.'" *Blitz*, 700 F.3d at 740 (quoting *Elgin*, 132 S. Ct. at 2132) (alteration omitted). Here, for reasons articulated above, there can be no doubt that Congress intended to foreclose collateral challenges to ongoing inter partes review proceedings.

*Second*: Cooper is incorrect that plaintiffs may bypass the applicable statutory review scheme where they raise facial challenges to federal statutes. *Elgin*—which involved a facial challenge to the selective service statute—expressly rejected an attempt to carve out an exception to the CSRA's administrative review process "for *facial or as-applied* constitutional challenges to federal statutes." 132 S. Ct. at 2134 (emphasis added). Contrary to plaintiffs' assertion, *see* Br. 42-43, this Court similarly requires parties raising facial constitutional challenges to proceed through the

22

applicable statutory review scheme. *See, e.g.*, *Nat'l Taxpayers Union*, 376 F.3d at 241, 243 (requiring plaintiff to pursue claim that statutory provision was "facially invalid" through SSA's statutory review scheme); *Virginia*, 74 F.3d at 522 (requiring Virginia to proceed through CAA's statutory review scheme where Virginia asked "that certain CAA provisions be declared unconstitutional on their face"). And *South Carolina Citizens for Life, Inc. v. Krawcheck*, 301 F. App'x 218, 222 n.6 (4th Cir. 2008) (unpublished opinion), the decision cited by plaintiffs as suggesting otherwise, *see* Br. 34, is neither precedential nor apposite. It involved a contention that a suit was not ripe, not a contention that the suit should have proceeded through a separate statutory review scheme. *See Citizens for Life*, 301 F. App'x at 221.

*Third*: Cooper cannot avoid the AIA's statutory review scheme by recasting his lawsuit as "a facial challenge to the attachment of the process itself to the parties." Br. 37. A plaintiff need not proceed through a statutory review scheme where the "plaintiff challenges the validity of the agency's enabling statute in an action wholly independent of the agency's enforcement of a substantive provision," especially where the constitutional claim might otherwise evade meaningful review. *Nat'l Taxpayers Union*, 376 F.3d at 244 n.3; *see also Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 490 (2010) (permitting collateral challenge to constitutionality of federal commission where the challenge was truly "collateral" to any order of the commission and where petitioners could not otherwise "meaningfully pursue their constitutional claims"); *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212-13 (1994) ("This Court

23

previously has upheld district court jurisdiction over claims considered wholly

'collateral' to a statute's review provisions and outside the agency's

expertise, particularly where a finding of preclusion could foreclose all meaningful

judicial review." (citations and quotation marks omitted)).

But Cooper's challenge is not "wholly collateral" to the inter partes review

proceedings that precipitated it, nor will a finding of preclusion "foreclose all

meaningful judicial review."  Cooper brought suit only after the PTO instituted inter

partes reviews threatening to cancel his patents, and Cooper's standing to pursue his

constitutional challenge rests on the injury he would suffer if his patents are in fact

cancelled.  Moreover, it is undisputed that Cooper can obtain thorough judicial review

of his constitutional claims, if necessary, in the Federal Circuit.  This case is therefore

similar to *Nat'l Taxpayers Union*, where this Court required a challenger to proceed

through the statutory review scheme where the challenger "brought this action in

anticipation of imminent enforcement proceedings" and could obtain meaningful

judicial review of those proceedings by "petition[ing] the appropriate court of appeals

to review" an adverse decision.  376 F.3d at 242 & 244 n.3; *see also Thunder Basin Coal*,

510 U.S. at 216 (rejecting a similar argument because "Petitioner's claims are 'pre-

enforcement' only because the company sued before a citation was issued").  This

Court should do the same here.

24

## III.   CONGRESS ACTED WELL WITHIN ITS CONSTITUTIONAL AUTHORITY IN AUTHORIZING THE PTO TO CONDUCT INTER PARTES REVIEWS.

For the foregoing reasons, this Court need not and should not reach the merits of Cooper's constitutional arguments.  But if the Court does reach those arguments, they can be readily rejected.  Nothing in Article III or the Seventh Amendment barred Congress from enacting the inter partes review scheme.  The Federal Circuit—the specialized court designated by Congress with exclusive jurisdiction over appeals arising under the patent laws—has twice rejected comparable constitutional challenges, holding that Congress may permissibly assign to the PTO the task of reconsidering the patentability of claims in issued patents.  *See Joy Techs., Inc. v. Manbeck*, 959 F.2d 226, 228 (Fed. Cir. 1992); *Patlex Corp. v. Mossinghoff*, 758 F.2d 594, 604 (Fed. Cir. 1985).  These cases were correctly decided, and nothing in this case calls for a different result.

### A.  Inter Partes Review Is Consistent With Article III.

**1.**  Article III provides that the "judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish."  U.S. Const. art. III, § 1.  Article III ensures an independent judiciary by mandating that judges in these courts "shall hold their Offices during good Behaviour" and "receive for their Services, a Compensation, which shall not be diminished" during their tenure.  *Id.*  The Constitution thus prohibits Congress from vesting the "judicial Power of the United States" outside of

25

courts whose judges enjoy the protections of Article III. "[I]n general," this prohibition prevents Congress from withdrawing from Article III courts any matter which, by its nature, involves the exercise of judicial power. *Stern v. Marshall*, 131 S. Ct. 2594, 2609 (2011).

The Supreme Court, however, has recognized important qualifications to that "general" rule. One such exception authorizes Congress to designate "public rights" for adjudication in non-Article III tribunals. More than 150 years ago, the Court recognized that:

> there are matters, involving public rights, which may be presented in such form that the judicial power is capable of acting on them, and which are susceptible of judicial determination, but which congress may or may not bring within the cognizance of the courts of the United States, as it may deem proper.

*Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. 272, 284 (1855). Whereas private rights are rights involving "the liability of one individual to another under the law as defined," *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 51 n.8 (1989) (quotation marks omitted), public rights are rights arising "'between the Government and persons subject to its authority in connection with the performance of the constitutional functions of the executive or legislative departments,'" *Stern*, 131 S. Ct. at 2612 (quoting *Crowell v. Benson*, 285 U.S. 22, 50 (1932)). Because the Constitution authorizes Congress to create public rights, it equally authorizes Congress to commit these rights to adjudication in non-Article III courts. *See id.* at 2612-13.

26

The Supreme Court's expression of the public-rights exception has been subject to "various formulations," *Stern*, 131 S. Ct. at 2611, but the relevant features of public rights are well settled.  Most critically, "what makes a right 'public' rather than private is that the right is integrally related to particular federal government action." *Id.* at 2613.  Indeed, where Congress has acted "for a valid legislative purpose pursuant to its constitutional powers under Article I," it may delegate even a "seemingly private right" to non-Article III courts if the right "is so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution." *Granfinanciera*, 492 U.S. at 54 (quotation marks omitted).  Nor must the federal government itself be a party to the litigation.  A dispute between private parties may implicate public rights if "the claim at issue derives from a federal regulatory scheme," or if "resolution of the claim by an expert government agency is deemed essential to a limited regulatory objective within the agency's authority." *Stern*, 131 S. Ct. at 2613.

**2.**  Patents are quintessential public rights.  Accordingly, Congress may entrust the adjudication of those rights to a non-Article III tribunal.

Article I of the Constitution authorizes Congress to create and regulate a patent system.  *See* U.S. Const. art. I, § 8, cl. 8 (granting Congress the power to "promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries").  Pursuant to this constitutional authority, Congress created the PTO—an agency with "special expertise in evaluating patent applications," *Kappos v. Hyatt*, 132 S. Ct. 1690, 1700

(2012)—and tasked it with examining each "alleged new invention" and, "if on such examination it appears that the applicant is entitled to a patent under the law," granting "a patent therefor." 35 U.S.C. § 131.

Patents are thus public rights that "exist only by virtue of statute." *Sears, Roebuck & Co. v. Stiffel Co.*, 376 U.S. 225, 229 n.5 (1964). Indeed, because patents are statutory grants conferring exclusive rights against the public at large, "[a] patent by its very nature is affected with a public interest." *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 816 (1945). As the Supreme Court has noted, quoting Thomas Jefferson, patent law has always "been about the difficult business 'of drawing a line between the things which are worth to the public the embarrassment of an exclusive patent, and those which are not.'" *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 148 (1989) (quoting 13 *Writings of Thomas Jefferson* 335 (Memorial ed. 1904)). In short, patents "dispose of public rights held by the government on behalf of the people." *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 848 n.2 (2015) (Thomas, J., dissenting).

In addition to tasking the PTO with issuing patents, Congress has, for thirty-five years, also authorized PTO to review the patentability of patents the agency has previously issued—first through ex parte reexamination, 35 U.S.C. § 303, then through inter partes reexamination, 35 U.S.C. §§ 311, 312 (2000), and now through inter partes review, 35 U.S.C. § 311. Congress enacted these post-issuance review schemes for the purpose of "establish[ing] a more efficient and streamlined patent

system." H.R. Rep. No. 112-98, pt. 1, at 40 (2011). Just as the public has an interest in the initial issuance of patents, the public also has an interest in ensuring that patents were properly issued. As the Supreme Court has stressed, the "far-reaching social and economic consequences of a patent . . . give the public a paramount interest in seeing that patent monopolies . . . are kept within their legitimate scope." *Precision Instrument*, 324 U.S. at 816.

Administrative review of a claimed invention's patentability therefore exemplifies the sort of matter that Congress may delegate to an expert agency for decision. Congress has established the inter partes review scheme "for a valid legislative purpose pursuant to its constitutional powers under Article I." *Granfinanciera*, 492 U.S. at 54 (quotation marks omitted). The right to obtain a United States patent "is so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution." *Id.* (quotation marks omitted). And resolution of inter partes review by an expert administrative tribunal is "essential to a limited regulatory objective within the agency's authority"—specifically, correcting the agency's own mistakes. *Stern*, 131 S. Ct. at 2613. Because Congress may empower PTO to issue patents in the first instance, it may equally empower PTO to revisit its decisions to ensure that the patents were properly issued.

**3.** The Federal Circuit has accordingly twice rejected the contention that post-issuance review of patents violates Article III. In *Patlex*, the Federal Circuit held that ex parte reexamination did not violate Article III because "the grant of a valid patent

is primarily a public concern." 758 F.2d at 604. The court reasoned that, although patentability "often is brought into question in disputes between private parties," the "threshold question usually is whether the PTO, under the authority assigned to it by Congress, properly granted the patent." *Id.* Because the right at issue "can only be conferred by the government," and because Congress sought to "refer patent validity questions to the expertise" of the PTO, the court found "no constitutional infirmity" in the patent reexamination process. *Id.* at 602, 604.

The *Patlex* court expressly distinguished *McCormick Harvesting Machine Co. v. Aultman & Co.*, 169 U.S. 606 (1898), on which Cooper relies. In *McCormick Harvesting*, the Supreme Court held that a patent owner seeking a patent reissue was entitled to have its claim adjudicated in an Article III court. *Id.* at 612. But the *Patlex* court explained that the patent *reissue* process, which was intended "to enable correction of errors made by the inventor, at the initiative of the inventor," differs from the patent *reexamination* process, which was intended "to correct errors made by the government, to remedy defective governmental (not private) action, and if need be to remove patents that should never have been granted." 758 F.2d at 604. The court accordingly concluded that nothing about *McCormick Harvesting* prevented Congress from authorizing the PTO "to correct government mistakes, even against the will of the patent owner." *Id.* "A defectively examined and therefore erroneously granted patent must yield to the reasonable Congressional purpose of facilitating the correction of governmental mistakes." *Id.*

30

Seven years later, the Federal Circuit reaffirmed *Patlex* in *Joy Technologies*. The court reiterated "that the issuance of a valid patent is primarily a public concern and involves a 'right that can only be conferred by the government' even though validity often is brought into question in disputes between private parties." 959 F.2d at 228 (quoting *Patlex*, 758 F.2d at 604). And the court easily reaffirmed the conclusion that the reexamination of issued patents "may constitutionally be adjudicated by legislative courts and administrative agencies." *Id.*

**4.** Cooper attempts to undermine the validity of *Patlex* and *Joy Technologies* and to distinguish those cases from this one. These attempts fall short.

*First:* Ignoring the Supreme Court's modern case law providing that public rights may appropriately be adjudicated in non-Article III tribunals, Cooper points to *McCormick Harvesting* and a host of other 19th century Supreme Court patent decisions that assertedly call into question the PTO's authority to reconsider the validity of issued patents. *See* Br. 17-22. But none of the cases on which Cooper relies undermines the constitutionality of inter partes review. *McCormick Harvesting* held only that the Patent Act itself provided no basis for cancelling an original patent based on the rejection of a later reissue application.[4] *See* 169 U.S. at 610 (explaining that the

---

[4] *McCormick Harvesting* is irrelevant here for the additional reason that inter partes reviews, unlike reissue proceeding, are intended to correct errors by the government rather than errors by the patent owner. *See Patlex*, 758 F.2d at 604 (distinguishing the patent reissue process discussed in *McCormick Harvesting* on these grounds). If this Court adopts Cooper's interpretation of *McCormick Harvesting*, its decision would squarely conflict with *Patlex* and *Joy Technologies*.

31

"object of a patentee applying for a reissue is not to reopen the question of the validity of the original patent"). A similar principle animated *United States v. American Bell Tel. Co.*, which held that Congress in the Patent Act did not intend to authorize the Executive Branch to cancel a previously issued patent. *See* 128 U.S. 315, 364 (1888) (explaining that the patent statutes "show very clearly the sense of congress" that if the power to cancel a patent is to be exercised, "it should be in the equity jurisdiction of th[e] courts"). These holdings reflect the reality that, in the 19th century, Congress had not authorized the Patent Office or any other administrative body to reconsider the validity of previously issued patents. But, since in 1980, Congress has provided the very statutory authority found to be lacking in *McCormick Harvesting* and *American Bell*. Neither case holds, as Cooper alleges, *see* Br. 18-20, that Article III prevented Congress from doing so.

The other decisions relied on by Cooper, all of which involve patents for land, are also inapposite. *See Iron Silver Mining Co. v. Campbell*, 135 U.S. 286, 293 (1890); *Moore v. Robbins*, 96 U.S. 530, 532-33 (1877); *United States v. Stone*, 69 U.S. 525 (1864). Patents for land are distinct from patents for inventions under Article III. Patents for land implicate property that is owned by, but not created by, the federal government, whereas patents for inventions "exist only by virtue of statute," *Stiffel*, 376 U.S. at 229 n.5, and thus are entirely created by the federal government. Given that "what makes a right 'public' rather than private is that the right is integrally related to particular federal government action," *Stern*, 131 S. Ct. at 2611, patents for inventions implicate

32

rights that are more "public" in nature than patents for land. *Compare B&B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1317 (2015) (Thomas, J., dissenting) (referring to land patents as "quasi-private rights"), *with Teva Pharm.*, 135 S. Ct. at 848 n.2 (Thomas, J., dissenting) (referring to invention patents as "public rights").

*Second*: While Cooper purports to find support for his position in Justice Thomas's dissenting opinion in *B&B Hardware*, 135 S. Ct. at 1310, both the majority and dissenting opinions in that case in fact reaffirm that Congress may authorize the PTO to reconsider the patentability of previously issued patents. *B&B Hardware* held that Article III courts should in some circumstances give preclusive effect to decisions of the Trademark Trial and Appeal Board (TTAB) in later trademark infringement suits. *Id.* at 1299. The majority expressed skepticism of the respondent's argument that giving preclusive effect to the TTAB's decisions would violate Article III or the Seventh Amendment, but declined to reach that argument, concluding "[t]o the extent, if any, that there could be a meritorious constitutional objection, it is not before us." *Id.* at 1304. But the Court rejected respondent's statutory argument that the Court should interpret the Lanham Act narrowly to avoid any constitutional concerns. *Id.* at 1304-05. The Court explained that because its precedents "are so clear" that the decisions of administrative agencies may be given preclusive effect in Article III courts, "there is no ambiguity for this Court to sidestep through constitutional avoidance." *Id.* at 1305.

In dissent, Justice Thomas, joined by Justice Scalia, argued that the "majority's application of administrative preclusion raises serious constitutional concerns" because it might allow administrative agencies to have the final word on "claims involving core private rights." *Id.* at 1316 (Thomas, J., dissenting). Justice Thomas concluded that trademark infringement suits might involve core private rights and thus "might be of a type that must be decided by Article III judges in Article III courts." *Id.* at 1317 (quotation marks omitted). But Justice Thomas rested his conclusion that trademark infringement suits might implicate private rights on the fact that the "exclusive right to use a trademark was *not created by the act of Congress*" but rather "existed long anterior to [the Lanham Act]." *Id.* (emphasis added and quotation marks omitted).

In stark contrast to trademark rights, patent rights "exist only by virtue of statute." *Stiffel*, 376 U.S. at 229 n.5. Thus, even as he dissented in *B&B Hardware*, Justice Thomas took it for granted that "quasi-private rights like land grants" could be "given preclusive effect in Article III courts." 135 S. Ct. at 1317. And Justice Thomas has elsewhere made clear that patents for inventions are "public rights." *Teva Pharm.*, 135 S. Ct. at 848 n.2 (Thomas, J., dissenting). Thus, even by Justice Thomas's rationale, patent rights may be adjudicated in non-Article III courts.

*Third*: Contrary to Cooper's assertion, Br. 30-33, there is no meaningful constitutional difference between ex parte reexamination and inter partes review by which *Patlex* and *Joy Technologies* can be distinguished from this case. As the district

34

court correctly concluded, "there is no constitutionally-significant distinction between the system of *ex parte* reexamination at issue in *Patlex* and *Joy* and the *inter partes* review system at issue here." JA 335. Like ex parte reexamination, inter partes review enables the PTO to correct an erroneous decision to issue a patent. Like ex parte reexamination, inter partes review does not adjudicate the private rights and liabilities of parties with respect to one another, but merely reconsiders the PTO's initial decision with respect to patentability—that is, the rights of the patentee against the public at large. And, like ex parte reexamination, inter partes review is conducted by "disinterested experts" within the PTO, the expert agency responsible for issuing the patent in the first instance. *See Patlex Corp. v. Mossinghoff* ("*Patlex II*"), 771 F.2d 480, 485 (Fed. Cir. 1985).

Cooper contends that *Patlex* and *Joy Technologies* can be distinguished because those cases "imbued [ex parte reexamination] with the legal fiction that it is *not* a review of patent validity, but instead is a re-do" of the patent issuance process, whereas no such legal fiction can be extended to inter partes review. Br. 30-31. But Cooper is wrong that *Patlex* and *Joy Technologies* rested on any such fiction. Rather, those cases rested on the correct understanding that Congress may authorize the PTO to reevaluate whether it properly granted the public right of a patent in the first instance. *Patlex*, 758 F.2d at 604. This conclusion encompasses ex parte reexamination and inter partes review alike.

35

Cooper also argues that the "adjudicatory nature" of inter partes review distinguishes it from the ex parte reexamination scheme upheld in *Patlex* and *Joy Technologies*. Br. 6. But, as the Supreme Court has recognized, administrative agencies may conduct "quasi-adjudicative" proceedings—even "involving claims between individuals"—as long as the proceedings implicate public rights. *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 587 (1985); *see also B&B Hardware*, 135 S. Ct. 1316, (Thomas, J. dissenting) (recognizing that administrative agencies may permissibly "function as courts . . . with respect to claims involving public or quasi-private rights"). If Congress may permissibly designate a matter for agency adjudication, nothing prevents Congress from granting the parties to that adjudication the sorts of procedural safeguards that normally attend judicial proceedings. It would be a peculiar doctrine of constitutional law that discouraged Congress from doing so.

## B. Inter Partes Review Is Consistent With The Seventh Amendment.

Inter partes review also comports with the Seventh Amendment. The Seventh Amendment states that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." U.S. Const. amend. VII. The Amendment thus ensures a jury-trial right with respect to certain suits "at common law." The "thrust of the Amendment was to preserve the right to jury trial as it existed in 1791." *Curtis v. Loether*, 415 U.S. 189, 193 (1974).

Cooper contends that he is entitled to have a jury determine the patentability of his claims. But the Seventh Amendment jury-trial right applies only to legal claims

36

involving rights that must be adjudicated in Article III courts. The Supreme Court has explained that "if Congress may assign the adjudication of a statutory cause of action to a non-Article III tribunal, then *the Seventh Amendment poses no independent bar* to the adjudication of that action by a nonjury factfinder." *Granfinanciera*, 492 U.S. at 53-54 (emphasis added); *see also Tull v. United States*, 481 U.S. 412, 418 n.4 (1987) (noting that "the Seventh Amendment is not applicable to administrative proceedings"); *Atlas Roofing Co. v. Occupational Safety & Health Review Comm'n*, 430 U.S. 442, 455 (1977) ("when Congress creates new statutory 'public rights,' it may assign their adjudication to an administrative agency with which a jury trial would be incompatible, without violating the Seventh Amendment's injunction that jury trial is to be 'preserved' in 'suits at common law'"); *id.* (the Seventh Amendment does not prevent Congress "from committing some new types of litigation to administrative agencies with special competence in the relevant field," even where "the Seventh Amendment would have required a jury where the adjudication of those rights is assigned instead to a federal court of law instead of an administrative agency"); *Pernell v. Southall Realty*, 416 U.S. 363, 383 (1974) ("the Seventh Amendment is generally inapplicable in administrative proceedings, where jury trials would be incompatible with the whole concept of administrative adjudication").

Accordingly, this Court has concluded that "the Seventh Amendment does not apply to disputes over statutory public rights." *Sasser v. Adm'r, U.S. E.P.A.*, 990 F.2d 127, 130 (4th Cir. 1993)*; see also Joy Techs.*, 959 F.2d at 228 ("cases involving 'public

rights' may constitutionally be adjudicated by legislative courts and administrative agencies without implicating the Seventh Amendment right to jury trial"). That reasoning applies here.

In any event, contrary to Cooper's assertion, Br. 24-29, inter partes review would not trigger the Seventh Amendment's jury-trial guarantee even absent a public right. Inter partes review provides no right to monetary damages, but affords only the equitable relief of cancellation of a patent. Cooper himself acknowledges that the closest analog to inter partes review is therefore a declaratory judgment action for patent invalidity. *See* Br. 26, 29. No Seventh Amendment jury-trial right attaches in such a declaratory judgment action. *See In re Tech. Licensing Corp.*, 423 F.3d 1286, 1290-91 (Fed. Cir. 2005) (per curiam) (holding that if "the patentee seeks only equitable relief, the accused infringer has no right to a jury trial, regardless of whether the accused infringer" raises invalidity as an affirmative defense or as a claim in a declaratory judgment action). Cooper nevertheless asserts that a jury-trial right attaches to such a declaratory judgment action "at least in the context of a simultaneous legal claim against the petitioner for patent infringement damages." Br. 29. But, of course, no damages are available in an inter partes review. Cooper's Seventh Amendment argument therefore fails even on its own terms.

## CONCLUSION

For the foregoing reasons, this appeal should be transferred to the Federal Circuit. In the alternative, the judgment of the district court should be affirmed.

Respectfully submitted,

*Of Counsel:*

BENJAMIN C. MIZER
   *Principal Deputy Assistant Attorney*
   *General*

   NATHAN K. KELLEY
      *Solicitor*

MARK R. FREEMAN
/s/ *William E. Havemann*

   SCOTT C. WEIDENFELLER
      *Associate Solicitor*
      *Office of the Solicitor – Mail Stop 8*
      *U.S. Patent and Trademark Office*
      *P.O. Box 1450*
      *Alexandria, Virginia  22313-1450*

WILLIAM E. HAVEMANN
   *(202) 514-8877*
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7515*
   *U.S. Department of Justice*
   *950 Pennsylvania Ave., N.W.*
   *Washington, D.C.  20530*

JUNE 2015

**CERTIFICATE OF COMPLIANCE WITH**
**FEDERAL RULE OF APPELLATE PROCEDURE 32(A)**

I hereby certify that this brief complies with the requirements of Fed. R. App.

P. 32(a)(5) and (6) because it has been prepared in 14-point Garamond, a

proportionally spaced font.  I further certify that this brief complies with the type-

volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains **9,407 words**,

excluding the parts of the brief exempted under Rule 32(a)(7)(B)(iii), according to the

count of Microsoft Word.

/s/ *William E. Havemann*
WILLIAM E. HAVEMANN

## CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2015, I electronically filed this brief with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the appellate CM/ECF system. I further certify that I will cause eight paper copies to be filed with the Court.

The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

/s/ *William E. Havemann*
WILLIAM E. HAVEMANN